[Civ. No. 16764.   First Dist., Div. Two.   July 9, 1956.]

GEORGE DAVIS, JR., Respondent, v. JOSEPH C.
STURGIS et al., Appellants.

Russel L. Warrick and Appel, Liebermann & Leonard for Appellants.

Clark, Heafey & Martin and Schofield & Cunningham for Respondent.

THE COURT.—These are reciprocal negligence actions with relation to an intersection collision. The jury denied recovery to both sides. Only Sturgis, the driver of a taxi-cab involved in the collision and Yellow Cab Company, the owner of the cab and employer of Sturgis, have appealed from the judgment which denies them recovery against Davis, the owner and operator of the Buick with which the cab collided. The appeal is not based on insufficiency of the evidence but solely on alleged errors in instruction and admission of evidence.

The accident happened on January 26, 1952, in full daylight at the intersection of Jones Street and North Point Street in San Francisco. Jones Street runs generally north and south; North Point Street east and west. Appellant Sturgis was driving his cab north on Jones Street in the direction of North Point Street. The entrance to the latter street is there controlled by a stop sign on the southeast corner of the intersection. This was the only stop sign controlling the intersection from any side. Davis was driving his Buick westerly on North Point, nearing the intersection from the east. Sturgis testified in substance that he made a stop at the stop sign; he saw the Davis car then an estimated 150 feet away going approximately 30 or 25 miles an hour. Having quickly looked in the other direction and seeing no vehicles he drove into the intersection about three car lengths going 10 to 12 miles an hour. He then saw Davis about 100 feet away. Sturgis then drove on straight with nothing in front of him and he does not remember anything further until he awoke in an ambulance. (The right front of the taxicab had been hit by the front of the Davis car.) Davis

testified that he was approximately 50 feet east of Jones Street going 25 miles an hour when he saw the taxi coming down Jones about 30 feet south of the stop sign, going 30 to 35 miles. Davis then looked in the other directions and he was about 30 feet from Jones, still going 25 miles, when he saw the taxi with its front part in the intersection driving the same speed as before, about 35 miles. He then braked but could not prevent the collision.

■■ Appellants predicate error on the refusal of the court to give the following instruction offered by them:

"There was no arterial stop sign on the North side of North Point Street. The only stop sign at the intersection of Jones and North Point Street was at the South East corner. You are instructed that the stop sign on the Southeast corner made the intersection a through highway only for eastbound traffic. Vehicles on the North side of North Point Street going West across the intersection of Jones Street, the direction in which Mr. Davis was proceeding, were not on a through highway. The speed limits for Mr. Davis' automobile under those circumstances in traversing the intersection was 15 miles per hour."

The refusal was justified because the instruction did not correctly state the law. There is no authority for the stated rule that when a street is at one side only protected by a stop sign that street is a through highway for the traffic only intended to use that side of the street. *Casselman* v. *Hartford Acc. & Indem. Co.*, 36 Cal.App.2d 700 [98 P.2d 539], on which appellants rely does not so hold. In the Casselman case the plaintiff tried to cross an east west highway coming from the north from a small road not blocked by a stop sign. His car was hit in the southern part of the highway by the car of defendant coming from the west. The court held that the highway at the point of the collision was not a through highway because there was no stop sign at the point where the road on which plaintiff was driving entered it. (P. 706.) It was evidently held that in the relation of the parties there involved no part of the highway could be considered a through highway to which the rule of section 582 of the Vehicle Code as to a vehicle entering a through highway applied. Neither is section 511 of the Vehicle Code authority for a speed limit of 15 miles per hour in an intersection on a street which is not a through highway. A prima facie speed limit to that effect is given in section 511, subdivision (4), only for intersections with obstructed

view. Both the prima facie character of the limit and the condition of an obstructed view are omitted in the instruction. No contention had been made at the trial nor evidence offered that the view at the intersection was obstructed.

Appellants also complain of the giving of an instruction in the words of section 552 of the Vehicle Code as follows:

"Section 552 of the Vehicle Code of the State of California, in full force and effect at the time of the happening of said accident, provides as follows:

" 'Subdivision a. The driver of any vehicle shall stop as required by Section 577 of this code at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard.

" 'Subdivision b. Said driver having so yielded may proceed and the driver of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicle so about to enter or cross the through highway.' "

■ Appellants are not in a position to complain of the giving of said instruction because it does not appear from the record who requested the instruction or whether the court gave it without a request. It is then presumed to have been given at the request of appellants who cannot complain of the giving of an instruction they requested. (*Lynch* v. *Birdwell*, 44 Cal.2d 839, 847 [285 P.2d 919]; *Smith* v. *Pellissier*, 134 Cal.App.2d 562, 570-571 [286 P.2d 66].) Moreover we do not think that the giving of the instruction was prejudicial even if North Point Street at this intersection should not be considered a through highway because it was not protected to the north by a stop sign. (There may have been here a "stop intersection" as meant in section 471, subdivision (b), of the Vehicle Code; no clear rule governing the crossing of such intersection is found in the Vehicle Code.) The relation of the parties was analogous to the one which would have existed if North Point was a through highway, appellant Sturgis being confronted by a stop sign, respondent not. No other cars were in the intersection. ■ It seems the only sensible rule that a party who has in such situation stopped pursuant to a stop sign should not move into the intersection when other vehicles not opposed by a stop sign are so near as to constitute an immediate hazard. It is evi-

dently not true, as contended by appellants, that the instruction would give Davis the right of way even when he was still 150 feet away when Sturgis had already proceeded through most of the intersection. (See subd. b. of the instruction.)

Finally appellants complain of the admission over their objection of testimony by Police Officer Walsh, who investigated the accident, that Davis during the investigation at the scene of the accident told him that he saw the other vehicle coming from the left and that he thought that the operator of that car would stop his car for the arterial sign, which statement according to appellants is inadmissible self-serving hearsay. Respondent contends that the evidence though hearsay was admissible under the rule of section 1854 of the Code of Civil Procedure that when part of the conversation is given in evidence by one party, the whole of the conversation, insofar as it is material to the same subject may be inquired into by the other, because appellants had elicited from the witness Walsh on direct, Davis' statement to him that he had driven 30 miles an hour and had braked only when the front of the taxicab was in the intersection. The rule stated applies also when the conversation given in evidence by the other party embraces the latter's self-serving declarations (*Hinton* v. *Welch,* 179 Cal. 463, 466 [177 P. 282] ; *Wescoatt* v. *Meeker,* 63 Cal.App.2d 618, 627 et seq. [147 P.2d 41] ; 18 Cal.Jur.2d 573, Evidence, § 129). In *Risdon* v. *Yates,* 145 Cal. 210, 213 [78 P. 641], it is said: "If an admission is testified to by a witness against a party, such party has the right in cross-examination to bring out the whole of what was said in direct connection with and pertaining to the admission." The trial court could consider the expectation that Sturgis would stop as directly relating to the admission of the driving on at a speed of 30 miles, elicited by appellants. What actually makes the self-serving statement objectionable to appellants is the intimation, not definitely expressed, that Sturgis did not stop. The trial court would have been entitled to exclude the statement if it thought this effect prejudicial. (*Avery* v. *Wiltsee,* 177 Cal. 484, 486 et seq. [171 P. 95].) Under the circumstances of this case, however, even if the admission would have been error, the effect could not have been sufficiently prejudicial to justify a reversal. The testimony of Davis stated before had already told the jury that Davis saw the taxi within so short a time driving at a

speed of 30 miles to the intersection and at the same speed within the intersection as to indicate that Sturgis did not make a stop at the stop sign, although at the exact moment at which the taxi was at said stop sign Davis according to his testimony was looking in another direction. The same intimation in the statement made to Officer Walsh can then not have had a seriously prejudicial effect.

Judgment affirmed.

A petition for a rehearing was denied August 8, 1956, and appellants' petition for a hearing by the Supreme Court was denied September 6, 1956.