[Civ. No. 24053.   Second Dist., Div. Two.   Mar. 16, 1960.]

THELMA ROSENBERG, a Minor, etc., et al., Respondents,
v. LARRY BYRON WITTENBORN et al., Appellants.

Schell & Delamer, Joseph Bender and Henry F. Walker for Appellants.

Paul Braslow for Respondents.

ASHBURN, J.—Personal injury action. Verdict for defendants. Plaintiffs' motion for new trial granted. Defendants appeal.

On October 1, 1956, plaintiff Thelma Rosenberg, a minor, was a passenger in a Lincoln automobile driven by Samuel B. Lincoln, and proceeding in a southerly direction on Westwood Boulevard. Within the intersection of Westwood and Pico Boulevards a collision occurred between the Lincoln and a westbound Mercury automobile which was owned by defendant Byron Wittenborn and was being operated by defendant Larry Byron Wittenborn with the permission and consent of said owner. Plaintiff Thelma Rosenberg and her father, Hyman Rosenberg, sued for damages for injuries received by Thelma in said accident. Defendants denied negligence and alleged unavoidable accident.

At the trial defendant Larry Wittenborn testified that he was westbound on Pico Boulevard at about 1 a.m.; when he was four to five car lengths from the intersection the traffic signal changed from green to yellow for westbound traffic; he realized he should stop and "I put on my brakes and there was nothing. I had braked the pedal but it had no stopping action on my car. So, I pumped my brakes several times, and after I was entering the intersection my brakes grabbed a little, but the first thing I knew this other car entered the intersection. I hit them broadside." He also said that he was going 25 to 30 miles an hour when the signal changed from green to yellow; that he had reduced his speed to the extent of 15 to 20 miles an hour before the impact; that the other vehicle was going about 50 miles an hour and was first seen

by him when he was a car length or half a car length into the intersection; the Lincoln was then between one and two car lengths from the intersection; he entered the intersection before the Lincoln; his car practically stopped at the point of collision and the other one traveled about three times as far, continued through the intersection and toward the southwest corner where it hit and glanced off a light pole. He also said that in June or July, 1956 (a few months before the accident) he had had his brakes relined; on the Friday before the accident he found he "had no brakes whatsoever" and had the master cylinder replaced; he had no further trouble with the brakes which worked extremely well at all times until the occasion of the accident.

Lincoln, the driver of the other car, testified that he did not see defendants' car; that he was *going through on the green* light and defendants' car "was already then coming through the crosswalk parallel to the way I was going"; the Lincoln was going about 25 miles an hour when entering the intersection; he had no idea as to defendant's speed other than "it seems like he was coming—he was unable to stop and was coming pretty good"; defendants' car hit the Lincoln and stopped; the Lincoln spun over to the street light on the southwest corner, bounced off it and stopped. Police Officer Bragulla said it spun completely around.

Respondents' brief says: "The only issue was that of the validity of the 'unexpected brake failure' defense."

Plaintiffs' notice of intention to move for a new trial specified only three grounds: "(1) Insufficiency of evidence to justify the verdict and judgment. (2) Said judgment is against law. (3) Error in law occurring at the trial and excepted to by plaintiffs." ▮ Of course, the motion could be made or granted upon no other ground (*DeFelice* v. *Tabor*, 149 Cal.App.2d 273, 274 [308 P.2d 377].) ▮ The order granting the motion made no mention of insufficiency of the evidence and hence it is conclusively presumed that it was not based upon that ground (Code Civ. Proc., § 657, last par.; *DeFelice* v. *Tabor, supra*, p. 274), and hence that specification has no place in the appeal. Respondents make no claim here that the "judgment is against law." The scope of review is thus reduced to alleged errors of law (*DeFelice* v. *Tabor*, *supra*, p. 274). The only one upon which respondents here rely is alleged error in admitting certain evidence upon the cross-examination of Police Officer Bragulla, plaintiffs' witness, who had investigated the accident at the scene shortly

after its occurrence. It is argued that the evidence so received was objectionable hearsay.

Using his police report as a substitute for independent recollection, the officer testified on direct examination: "Q. Now, did you have occasion to take a statement or discuss the accident with the driver of the Mercury automobile and ask him what happened? A. I did. Q. Did you ask him how fast he was going prior to the impact? A. I did. Q. Did he answer you? A. He did. Q. What did he tell you of his speed? A. 30 miles per hour; about 30 miles per hour." Also: "Q. Did you ask Mr. Wittenborn, or did he tell you, whether at the time of the accident he had the red light or green light for his lane of traffic westbound on Pico Boulevard? A. He first stated the light was 'green for me,' and when he was pretty close to the intersection, 'the signal turned yellow.' Q. Did he tell you whether or not he entered the intersection against the red light? A. Well, he said he realized that he wouldn't make it so he stepped on his brakes to stop. Q. Did he say or did he tell you the condition of the light as he did enter the intersection? By light, I mean the light for him? A. Yes. He said, 'It was red for me.' " Upon cross-examination the officer was asked this partial question (which had been answered on direct): "Q. Did you have a conversation with the defendant, Larry Byron Wittenborn, at the scene of the accident, in which——"; counsel for plaintiff interrupted and outside the presence of the jury urged an objection that any portions of the conversation other than those given on direct examination would be hearsay and self-serving, saying in part: "I think this phase of the statement by the police officer, of what the defendant told him, which contains a statement made to him concerning alleged brake failure is objectionable, and I make an anticipatory objection to any evidence, any such evidence from the police officer as to what the defendant told him at the scene of the accident on the basis that it is hearsay. . . . The point I now raise is that it is an admission against interest and a self-serving declaration, and that it is hearsay, pure and simple. . . . I limited my direct examination, intentionally, to the defendant's statement to the officer regarding two points: specifically, number one,—speed; and number two,—the condition of the light as defendant entered the intersection. I tried to be as careful as I could. . . . The two points that I specifically brought out, the speed and the condition of the signal as he entered the intersection, are clearly, in my mind, an admission against interest which can

be testified to regardless of where and when and under what circumstances they took place. The rest of the other portion of his statement, as referred to in the police report, is self serving.'' After discussion, the objection was overruled. Examining counsel then asked this substitute question: ''Officer, would you tell us what Mr. Wittenborn told you at the scene of the accident?'' The objection and ruling were made applicable thereto and the witness read from his police report as follows: '' 'I was driving west on Pico Boulevard going about 30 miles an hour. As I approached Westwood Boulevard the light was green for me. When I was pretty close to the intersection the light turned yellow.' Mr. Bender: 'Signal.' The Witness: 'the signal turned yellow. I realized that I wouldn't make it so I stepped on the brakes to stop. At this time I realized that my brakes were not working. The brake pedal did not go to the floor board. It maybe went a third of the way down but the brakes did not hold. I pumped my brakes and at the last minute it did grab. I would estimate that I was about three car lengths east of the intersection when the light turned red for me and green for north and south traffic on Westwood. I did not see the other car,' which would be indicating the Lincoln, 'in time to swerve or do anything. My brakes were relined about three months ago and last Friday the master cylinder went out. I got it fixed Saturday and they have been okay since then.' '' Motion to strike said evidence was thereupon made and denied.

Counsel for respondents says that the court in ruling on the motion for new trial reversed itself and held that the last quoted evidence should not have been admitted. ▮ It is well to note at this point that the customary discretion of the trial judge upon motion for new trial does not extend to granting the motion upon the ground of error which does not actually exist; that question is strictly one of law and the ruling is to be appraised accordingly.

Speaking of a ruling upon the admission of evidence the court said, in *Estate of Baird,* 198 Cal. 490, 507 [246 P. 324] : ''For the foregoing reasons there was not in our opinion any legal showing made by respondent to justify the trial court in granting his motions for a new trial. In arriving at this conclusion we are not unmindful of the well established and salutary rule which clothes the trial court with broad discretionary powers in the consideration and determination of motions of this character. While these powers are broad and extensive, they are not unlimited and their exercise is controlled by other rules of procedure equally well settled and beneficial in

their application. One of these last mentioned rules is that where the trial court errs in the application of the legal principles applicable to a cause in granting a motion for a new trial thereof such action will be corrected on appeal just as readily as if the motion had been overruled."

*Conner* v. *Southern Pacific Co.*, 38 Cal.2d 633, 637 [241 P.2d 535], speaking of the giving of an instruction, says: "But the instructions are not erroneous in law or misleading in fact. They correctly informed the jury that Conner should have exercised reasonable care in the circumstances in which he was, and left it to the jury to decide whether he could and should have done anything more than let himself be pulled slowly into the path of the approaching train. Whether instructions which are actually erroneous are cured by other, correct instructions or are prejudicial is a question for the discretion of the trial court [citation] but where, as here, the instructions are correct, there is no basis for the exercise of discretion, and no legal ground, in that respect, on which a new trial may be granted [citation]. The inquiry as to whether instructions are erroneous presents purely a question of law [citations] and if it appears on appeal that a trial court in granting a new trial based its order exclusively upon an erroneous concept of legal principles applicable to the cause, its order will be reversed." See also *Gallegos* v. *Nash, San Francisco*, 137 Cal.App.2d 14, 17 [289 P.2d 835].

That there was no error in receiving the evidence in question seems clear beyond peradventure. Plaintiffs' attorney was trying to leave the jury with the impression that defendant by way of admission told the officer that he was going about 30 miles an hour before the impact, that he stepped on his brakes when the signal turned yellow and entered the intersection against the red light,—that he said this and no more. These statements were in fact so qualified when made to the officer that they carried no implication (such as plaintiffs would have the jury draw) that defendant ran the red light because he was going too fast to stop within the distance he had available. These admissions were immediately coupled with the assertion that defendant realized when he stepped on the brakes that same were not working; that the brake pedal did not go to the floor; he pumped the brakes and finally they did grab; (inferentially) that this was unforeseeable because the brakes were relined about three months before the accident, the master cylinder went out on the Friday before that event, it was fixed on Saturday and the brakes were "okay" at all

times thereafter until the accident. Considerations of fair play demanded that the portion of the conversation placed in evidence by plaintiffs be supplemented by the qualifying and enlightening portions of the conversation which gave it a very different complexion than that which the plaintiffs' segregated passages bore.

Section 1854, Code of Civil Procedure, provides: "When part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing, which is necessary to make it understood, may also be given in evidence." This seems to be but a codification of a generally prevailing rule and to be subject only to the qualification that the additional matter be relevant to the portion previously introduced (*People* v. *Kent*, 135 Cal.App.2d 422, 428 [287 P.2d 408]) or, as phrased in the statute, "necessary to make it understood." This does not presuppose or have any necessary relationship to ambiguity in the primary admission; the rule is broader than that, as broad as principles of fair play may demand.

A good statement of the rule is found in 20 American Jurisprudence, section 551, page 463: "If a statement is admissible in evidence as an admission or declaration, it is admissible as an entirety, including parts that are unfavorable, as well as those that are favorable, to the party offering it in evidence. In the event a statement admitted in evidence constitutes part of a conversation or correspondence, the opponent is entitled to have placed in evidence all that was said or written by or to the declarant in the course of such conversation or correspondence, provided the other statements have some bearing upon, or connection with, the admission or declaration in evidence and are not excluded by a rule of law other than the hearsay rule."

The fact that the additional and qualifying statements may be favorable to the party offering same, may be self-serving, affords no basis for excluding them; on the contrary it gives good reason for receiving them in order that the truth may be whole.

See in support of the foregoing propositions, *Risdon* v. *Yates*, 145 Cal. 210, 212-214 [78 P. 641]; *People* v. *Whitehead*, 113 Cal.App.2d 43, 48-49 [247 P.2d 717]; *Long* v. *California-Western States Life Ins. Co.*, 43 Cal.2d 871, 881 [279 P.2d 43]; *Wescoatt* v. *Meeker*, 63 Cal.App.2d 618, 629-631 [147

P.2d 41]; *Hawkinson* v. *Oesdean*, 61 Cal.App.2d 712, 719 [143 P.2d 967]; *Hatfield* v. *Levy Brothers*, 18 Cal.2d 798, 812-813 [117 P.2d 841]; *Leboire* v. *Royce*, 100 Cal.App.2d 610, 619-620 [224 P.2d 106]; *People* v. *Crowl*, 28 Cal.App.2d 299, 307-308 [82 P.2d 507]; *People* v. *Tugwell*, 28 Cal.App. 348, 358 [152 P. 740]; *Davis* v. *Sturgis*, 142 Cal.App.2d 840, 844 [299 P.2d 408]; Witkin on California Evidence, § 223(c), p. 250; §§ 632-633, pp. 677-678.

In *People* v. *Whitehead, supra,* 113 Cal.App.2d 43, 49, the court quotes the following pertinent observations of Professor Wigmore: "The fundamental feature of cross-examination '. . . is that a witness, on his direct examination, discloses but a part of the necessary facts. That which remains suppressed or undeveloped may be of two sorts, (a) the remaining and qualifying circumstances of the subject of testimony, as known to the witness, and (b) the facts which diminish the personal trustworthiness of the witness.

" '(a) The remaining and qualifying circumstances of the subject of testimony will probably remain suppressed or undisclosed, not merely because the witness frequently is a partisan, but also and chiefly because his testimony is commonly given only by way of answers to specific interrogatories . . . and the counsel producing him will usually ask for nothing but the facts favorable to his party. If nothing more were done to unveil all the facts known to this witness, his testimony (for all that we could surmise) might present half-truths only. Someone must probe for the possible (and usual) remainder. The best person to do this is the one most vitally interested, namely, the opponent. Cross-examination, then, i.e., further examination by the opponent, has for its first utility the extraction of the remaining qualifying circumstances, if any, known to the witness, but hitherto undisclosed by him.' (Wigmore, vol. V, [3d ed.] § 1368, p. 33.)"

Respondents' insistent reliance upon *Crosby* v. *Martinez,* 159 Cal.App.2d 534 [324 P.2d 26], a case decided by this division, is misplaced. It is not opposed to the views above expressed. The case did not involve the problem here presented (see p. 541).

There was no error in receipt of the evidence now under consideration and the *alleged* error therein cannot support the order granting a new trial.

Order granting new trial reversed.

Fox, P. J., and Herndon, J., concurred.