[L.A. No. 31840. Sept. 13, 1984.]

JASON R. CARSON, a Minor, etc., et al., Plaintiffs and Appellants, v. FACILITIES DEVELOPMENT COMPANY et al., Defendants and Respondents.

COUNSEL

George R. McClenahan and Harold F. Tyvoll for Plaintiffs and Appellants.

John W. Witt, City Attorney, Ronald L. Johnson, Chief Deputy City Attorney, Vincent P. Di Figlia and Alejandro Matuk, Deputy City

Attorneys, George E. Fleming, Virginia R. Gilson, McInnis, Fitzgerald, Rees, Sharkey & McIntyre, Philip D. Sharp, Shifflet, Sharp & Walters, Higgs, Fletcher & Mack and Donald H. Glaser for Defendants and Respondents.

---

## OPINION

**BIRD, C. J.**—Did the trial court err in granting defendants' motions for nonsuit in this wrongful death action?

### I.

Plaintiffs are the surviving minor children and husband of Carol Carson (decedent), who was killed in a car collision on March 30, 1978, in the City of San Diego, California. Defendants are the City of San Diego (City), Facilities Development Company (FDC), which built the Friars Hollow condominium complex located near the site of the car accident, the Friars Hollow Homeowners Association (Friars Hollow), and Roger Kurtz, the driver of the automobile that collided with decedent's vehicle.

About 5 p.m. on March 30, 1978, decedent was driving her Ford Pinto southbound on Colusa Street. Her two children, Jason and Michael, were passengers. Decedent was following her husband, Robert, who was riding ahead of the Pinto on his motorcycle.

At the intersection of Colusa Street and Friars Road, Robert turned left and proceeded east along Friars Road. Decedent approached the intersection behind him and stopped her car at the stop sign limit line. She then drove forward, closer to Friars Road, and stopped again.

After her second stop, decedent pulled out into the intersection, intending to make a left turn and proceed east along Friars Road. While her car was still in the intersection, it was struck by Kurtz's Chevrolet Impala, which was proceeding west on Friars Road. Kurtz's car was about 50 feet from decedent's vehicle when she started into the intersection. Decedent died about an hour later from the injuries sustained in the collision. Jason and Michael were injured as well.

The Friars Hollow condominium complex is located on the north side of Friars Road, immediately to the east of the Colusa Street intersection. The complex was built and originally managed by FDC. In August of 1977, prior to the accident, FDC erected an address sign along Friars Road. This

sign was placed in a position perpendicular to Friars Road, near the intersection of Friars Road and Colusa Street.

The strip of land on which the sign was erected was owned by the City. A few trees were located near the sign on the same strip of land. The City required an encroachment permit for the placement of a sign on its property.[1] FDC did not seek or obtain the required permit.

In November of 1977, FDC sold the condominium complex to Friars Hollow, an incorporated association of condominium owners. Friars Hollow left the address sign in place and did not apply to the City for a permit authorizing the encroachment.

Plaintiffs presented a timely claim to the City for damages for the wrongful death of decedent.[2] On August 14, 1978, that claim was rejected.

Subsequently, on January 10, 1979, plaintiffs filed a lawsuit for wrongful death and personal injuries naming the City, FDC, Friars Hollow and Kurtz as defendants.[3] In their complaint, plaintiffs alleged that the City negligently maintained Colusa Street and Friars Road in a dangerous and defective condition by permitting the address sign and shrubbery to obstruct the visibility of drivers travelling along those streets. Similarly, plaintiffs alleged that FDC and Friars Hollow negligently built, maintained and controlled the condominium complex by allowing the sign and shrubbery to create an obstruction to the drivers' visibility. Further, plaintiffs alleged that Kurtz was driving in a negligent manner when his car collided with decedent's car. The complaint stated that the negligence of each of the defendants proximately caused the injuries suffered by plaintiffs. At the beginning of trial, plaintiffs successfully moved to amend their complaint to add a cause of action for nuisance against FDC and Friars Hollow.

On March 1, 1982, the jury trial on plaintiffs' action commenced. Plaintiffs offered testimony from defendant Kurtz, plaintiff Robert Carson, Bruce Gomes, a witness to the accident, Michael Varlas, the police officer who investigated the accident, and Cortland Young, Richard Alexander and Marjorie Warner, current and former residents of the Friars Hollow condomin-

---

[1] *San Diego Municipal Code* section 62.0103 prohibited the construction of an encroachment on City property without a permit. Sections 62.0301-62.0303 set forth the requirements to apply for permits authorizing such encroachments.

[2] Section 911.2 of the Government Code requires that a claim relating to a cause of action for death or personal injuries be presented to a local public entity not later than the 100th day after accrual of the cause of action.

[3] The complaint originally named several other defendants, including the manufacturer of decedent's car, Ford Motor Company. For reasons not reflected in the record, these additional defendants were not involved in the trial.

ium complex who were familiar with the driving conditions at the Colusa Street-Friars Road intersection.

One of the major issues addressed by the testimony was whether and to what degree the address sign and the trees located along the north side of Friars Road obstructed the visibility of drivers stopped on Colusa Street at the north side of the intersection. Warner and Varlas testified that visibility to the east was clear from the driver's seat of a car stopped behind the stop sign limit line. This evidence suggested that decedent's view of oncoming traffic was clear each time she stopped before entering the intersection. In contrast, Young testified that the driver of a southbound car on Colusa Street did not have a clear view of oncoming westbound traffic until the front of his car had moved past the stop sign limit line and was protruding slightly into Friars Road past its north curb. This evidence suggested that the sign and/or shrubbery obstructed decedent's view at both her stopping points.

At the close of plaintiffs' case, the City, FDC and Friars Hollow each moved for a judgment of nonsuit.[4] The trial court granted their motions and entered judgments in their favor. The trial continued and at its conclusion the jury returned a verdict in favor of defendant Kurtz. Plaintiffs appeal from each of these judgments.

## II.

■ A motion for nonsuit allows a defendant to test the sufficiency of the plaintiff's evidence before presenting his or her case. Because a successful nonsuit motion precludes submission of plaintiff's case to the jury, courts grant motions for nonsuit only under very limited circumstances. (*Campbell* v. *General Motors Corp.* (1982) 32 Cal.3d 112, 117 [184 Cal.Rptr. 891, 649 P.2d 224].) ■ A trial court must not grant a motion for nonsuit if the evidence presented by the plaintiff would support a jury verdict in the plaintiff's favor. (*Id.,* at pp. 117-118; *Ewing* v. *Cloverleaf Bowl* (1978) 20 Cal.3d 389, 395 [143 Cal.Rptr. 13, 572 P.2d 1155].)

"In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give 'to the plaintiff['s] evi-

---

[4] Section 581c of the Code of Civil Procedure provides in pertinent part: "(a) After the plaintiff has completed his or her opening statement, or the presentation of his or her evidence in a trial by jury, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a judgment of nonsuit. . . . (c) If the motion is granted, unless the court in its order for judgment otherwise specifies, the judgment of nonsuit operates as an adjudication upon the merits."

dence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor . . . .'" (*Campbell* v. *General Motors Corp., supra,* 32 Cal.3d at p. 118, quoting *Elmore* v. *American Motors Corp.* (1969) 70 Cal.2d 578, 583 [75 Cal.Rptr. 652, 451 P.2d 84, 33 A.L.R.3d 406]; accord *Ewing* v. *Cloverleaf Bowl, supra,* 20 Cal.3d at p. 395; *Estate of Lances* (1932) 216 Cal. 397, 400 [14 P.2d 768].)

■ In an appeal from a judgment of nonsuit, the reviewing court is guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff. "The judgment of the trial court cannot be sustained unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law." (*Mason* v. *Peaslee* (1959) 173 Cal.App.2d 587, 588 [343 P.2d 805]; accord *Miller* v. *Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 699 [106 Cal.Rptr. 1, 505 P.2d 193]; *Hughes* v. *Oreb* (1951) 36 Cal.2d 854, 857 [228 P.2d 550].)

Although a judgment of nonsuit must not be reversed if plaintiff's proof raises nothing more than speculation, suspicion, or conjecture, reversal is warranted if there is "some substance to plaintiff's evidence upon which reasonable minds could differ . . . ." (*Ulwelling* v. *Crown Coach Corp.* (1962) 206 Cal.App.2d 96, 104-105 [23 Cal.Rptr. 631]; accord *Campbell* v. *Security Pac. Nat. Bank* (1976) 62 Cal.App.3d 379, 384-385 [133 Cal.Rptr. 77]; *Hilliard* v. *A.H. Robins Co.* (1983) 148 Cal.App.3d 374, 415 [196 Cal.Rptr. 117].) Only the grounds specified by the moving party in support of its motion should be considered by the appellate court in reviewing a judgment of nonsuit. (*Lawless* v. *Calaway* (1944) 24 Cal.2d 81, 92-94 [147 P.2d 604]; *Markwell* v. *Sykes* (1959) 173 Cal.App.2d 642, 651-652 [343 P.2d 769].)

Plaintiffs' cause of action against the City alleged that the City negligently maintained and controlled Colusa Street and Friars Road in a dangerous and defective condition by permitting the sign and trees to obstruct the visibility of drivers travelling on those streets. Plaintiffs also alleged that the City knew, or should have known, that the dangerous condition was present at the time of the accident, that it constituted a hazard to the general public, and that it created a reasonably foreseeable risk of the kind of injuries which were incurred. Further, plaintiffs' complaint alleged that as a proximate result of the dangerous condition, decedent's car was struck and plaintiffs were injured.[5]

---

[5]Plaintiffs' allegations against the City stated a cause of action under Government Code section 835 which provides: "Except as provided by statute, a public entity is liable for

At the close of plaintiffs' case, the City moved for nonsuit. It asserted three grounds in support of its motion. First, the City argued that even if the sign created a dangerous condition, the City was not statutorily liable because it did not erect the sign. Second, the City contended that it could not be liable for any injuries caused by the sign because it had no notice of the sign's presence. Third, the City asserted that the plaintiffs failed to adequately show the existence of a dangerous condition because their evidence was offered exclusively by lay witnesses. The City contended that testimony from qualified experts was necessary to establish that the sign created an obstruction which constituted a "dangerous condition."[6]

None of the stated grounds supports the trial court's grant of the City's motion for nonsuit. ▆▆▆ The first ground asserted by the City is based upon the definition of "property of a public entity" contained in Government Code section 830.[7] One of the elements necessary to establish liability of a public entity is that the dangerous condition be "of its property." (§ 835.)[8] Nonsuit for the City is proper if the plaintiffs have failed to establish that element.

Subdivision (c) of section 830 provides: "'Property of a public entity' and 'public property' mean real or personal property owned or controlled by the public entity, but do not include easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity." The City contended that, because the encroaching sign was neither erected nor owned by the City, it did not constitute City property.

However, ownership or control of the encroaching sign is irrelevant to the question of the City's liability. The City property at issue in this case

---

injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

[6]Plaintiffs' complaint mentioned "shrubbery" along Friars Road as a component of the "dangerous condition" maintained by the defendants. Although several of the witnesses at trial referred to either "trees" or "shrubbery" in their testimony concerning the alleged obstruction, the address sign alone was identified as a possible obstruction when the parties addressed defendants' motions for nonsuit.

[7]All subsequent statutory references are to the Government Code unless otherwise indicated.

[8]See *ante,* footnote 5.

is not the sign, but the intersection that was rendered dangerous by erection of the sign. The City conceded that it "owned, controlled, and maintained" the intersection.

Under section 835, a public entity is liable only for a dangerous condition of its own property. However, "its own property may be considered dangerous if a condition on the adjacent property exposes those using the public property to a substantial risk of injury." (Cal. Law Revision Com. com. to § 830; accord *Briggs* v. *State of California* (1971) 14 Cal.App.3d 489, 499 [92 Cal.Rptr. 433].) ■ Specifically, a public entity can be held liable for an accident caused by a condition that exists on property adjacent to a public highway if the condition " 'is so connected with or in such proximity to the traveled portion of the highway as to render it unsafe to those traveling thereon.' " (*Bakity* v. *County of Riverside* (1970) 12 Cal.App.3d 24, 30 [90 Cal.Rptr. 541]; accord *De La Rosa* v. *City of San Bernardino* (1971) 16 Cal.App.3d 739, 745-746 [94 Cal.Rptr. 175].)

In *Bakity,* plaintiffs alleged that roadside trees obstructed the view of motorists approaching the intersection of two county highways. The court held that the county was liable for the dangerous condition of its property— the intersection—regardless of who owned the land upon which the trees were located. "While the record is unclear whether the trees were on or off the county right of way, assuming they were growing on adjacent property, the jury could nevertheless have reasonably inferred that by reason of their proximity to the intersection they exposed motorists using the highway to a substantial risk of injury." (*Bakity, supra,* 12 Cal.App.3d at p. 30.)

■ Here, a sign located on property adjacent to a City intersection allegedly obstructed the view and rendered the intersection dangerous. As in *Bakity,* ownership of the adjacent property and the obstruction located thereon is irrelevant. The City is liable if the sign, "a condition on adjacent property," exposed those using the intersection to a "substantial risk of injury." (Law Revision Com. com. to § 830.)

The City's reliance on *Mark* v. *Pacific Gas & Electric Co.* (1972) 7 Cal.3d 170 [101 Cal.Rptr. 908, 496 P.2d 1276] is misplaced. In *Mark,* this court upheld a nonsuit granted in favor of the defendant city in a wrongful death action where the decedent had been electrocuted trying to remove the bulb from a street lamp. The street lamp may have been located on city property but was owned and maintained by a utility company. The court held that plaintiffs failed to prove that the city owned or controlled the street lamp.

*Mark* is inapposite. In *Mark,* the street lamp itself constituted the allegedly dangerous condition. Here, the sign was not in a dangerous condition. In-

stead, its location rendered the City's intersection dangerous. Ownership and control of the intersection, not the sign, is the basis of liability here.

The City argues that subdivision (c) of section 830 precludes governmental liability where a public entity retains no ownership or control over an easement or encroachment on its property. However, the City's liability in this case is not predicated on ownership or control of the encroaching sign.[9] The property in a dangerous condition is not the sign, but the intersection. Because the City owned and controlled the intersection, the City's first ground for nonsuit fails.

 The second ground asserted by the City is that plaintiffs failed to show that the City had notice of the alleged dangerous condition. As specified in section 835 (see *ante,* fn. 5), unless the dangerous condition is created by a negligent or wrongful act or omission of an employee of the public entity, plaintiff must prove that the public entity had notice of the dangerous condition.

Section 835.2 provides that the notice condition may be met by either actual notice (subd. (a)) or constructive notice (subd. (b)). Subdivision (b) provides: "A public entity had constructive notice of a dangerous condition within the meaning of subdivision (b) of Section 835 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character."

There is no evidence that the City had actual notice of the obstruction caused by the encroaching sign. It did not erect the sign nor did it receive actual notice of the sign's existence by a permit application. The question presented is whether the City had constructive knowledge.

 "[C]onstructive notice may be imputed if it can be shown that an obvious danger existed for an adequate period of time before the accident to have permitted the [public entity], in the exercise of due care, to discover and remedy the situation . . . ." (*State of California* v. *Superior Court* (1968) 263 Cal.App.2d 396, 400 [69 Cal.Rptr. 683], italics deleted; accord *Stanford* v. *City of Ontario* (1972) 6 Cal.3d 870, 880-881 [101 Cal.Rptr.

---

[9]The City owned the property on which the sign was located. Therefore, it had the power to remedy the dangerous condition. Under San Diego Municipal Code sections 62.0103 and 62.0301, no encroachment could be constructed on City property without a permit. The City never issued a permit authorizing the sign, and the City had authority to remove the sign pursuant to San Diego Municipal Code section 62.0104. That section allowed the city engineer to "require that . . . work done without a permit be removed or corrected at the expense of the responsible persons."

97, 495 P.2d 425].) The questions of whether a dangerous condition could have been discovered by reasonable inspection and whether there was adequate time for preventive measures are properly left to the jury. (*Eastlick* v. *City of Los Angeles* (1947) 29 Cal.2d 661, 672 [177 P.2d 558, 170 A.L.R. 225]; *Erfurt* v. *State of California* (1983) 141 Cal.App.3d 837, 845 [190 Cal.Rptr. 569]; *Straughter* v. *State of California* (1976) 89 Cal.App.3d 102, 110-111 [152 Cal.Rptr. 147].)

Appellate courts have upheld jury verdicts finding constructive notice and imposing liability on governmental defendants in a variety of factual contexts. For example, in *Erfurt* v. *State of California, supra,* 141 Cal.App.3d 837, the Court of Appeal upheld a jury verdict in plaintiff's favor for injuries she sustained when her car struck a highway guard rail. The jury found that defendant had constructive notice of the dangerous condition— the glare of the rising sun reflected off the surface of a road—even though that condition had existed only 20 days a year during the 10 years since the road was constructed.

In *Straughter* v. *State of California, supra,* 89 Cal.App.3d 102, a jury returned a verdict in favor of the plaintiff, impliedly finding that the defendant public entity had constructive notice of the existence of ice on a highway. The Court of Appeal upheld the jury's finding and the judgment, even though the defendant's witnesses had testified that they had not seen ice on the highway prior to the accident, and expert testimony indicated that the icy conditions had begun developing less than four hours before the accident. (See also *Levine* v. *City of Los Angeles* (1977) 68 Cal.App.3d 481, 489 [137 Cal.Rptr. 512] [upholding the jury's determination that defendant city had constructive notice of the intersection's dangerous condition created by an abrupt roadway narrowing which had existed for several years]; *Lorraine* v. *City of Los Angeles* (1942) 55 Cal.App.2d 27, 30-31 [130 P.2d 140] [upholding the jury's implied finding that defendant city had constructive notice of a sidewalk hole which was 18 inches long and 7 inches wide and had existed for at least a month].)

The City erroneously relies on *State of California* v. *Superior Court, supra,* 263 Cal.App.2d 396 to support its contention that there was no constructive notice here. In *State of California,* the Court of Appeal held, as a matter of law, that the primary element of constructive notice—an *"obvious condition [which] existed a sufficient period of time before the accident"—* had not been shown. (*Id.,* at p. 400, italics in original.) However, the dangerous condition which caused injury in *State of California* was the remains of a fire (hot coals and ash) that was buried under the sand on defendant's beach. The dangerous condition was literally hidden from view. The sign

which caused the allegedly dangerous condition at issue here was visible from a public roadway for many months.

■ The case law clearly indicates that a jury could have inferred that the City had constructive knowledge of the allegedly dangerous condition created by the encroaching sign. The sign was located next to the intersection for seven months prior to the accident. Further, Varlas, a city police officer, testified that traffic on Friars Road near Colusa Street was "on the heavy side of moderate to the low side of heav[y] . . . ." The jury could reasonably have inferred from this evidence that City police officers regularly patrolled the intersection. For purposes of the motion for nonsuit, the trial court should have accepted as true the evidence that the City had constructive notice. Therefore, the judgment of nonsuit in favor of the City cannot be upheld on this ground.

■ The third ground offered by the City in support of its motion was plaintiffs' failure to establish the existence of a dangerous condition by expert testimony.

■ "[T]he decisive consideration in determining the admissibility of expert opinion evidence is whether the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (*People* v. *Cole* (1956) 47 Cal.2d 99, 103 [301 P.2d 854, 56 A.L.R.2d 1435]; *Miller* v. *Los Angeles County Flood Control Dist., supra,* 8 Cal.3d 689, 702; see also Evid. Code, § 801, subd. (a).) Expert opinion evidence is required in some circumstances. "If the matter in issue is one within the knowledge of experts *only* and not within the common knowledge of laymen, it is necessary for the plaintiff to introduce expert opinion evidence in order to establish a prima facie case." (*Miller* v. *Los Angeles County Flood Control Dist., supra,* 8 Cal.3d at p. 702, italics in original; accord *Lawless* v. *Calaway, supra,* 24 Cal.2d 81, 86.)

This rule has been applied to require expert testimony on a wide range of issues. For example, in *Lawless* v. *Calaway, supra,* 24 Cal.2d 81, 86-89, this court held that expert testimony was necessary in a medical malpractice action to prove that the defendant had failed to properly diagnose decedent's internal abdominal ailment. Similarly, in *Miller* v. *Los Angeles County Flood Control Dist., supra,* 8 Cal.3d 689, the court affirmed the nonsuit judgment in favor of the builder of the plaintiffs' home where the plaintiffs had failed to produce expert testimony on standard building practices concerning the erection of a structure, its proper location on the lot, the influence of the surrounding terrain, the importance of the lot elevation, the

potential for rain run-offs and floods, and the existence of a debris dam. (See also *Truman* v. *Vargas* (1969) 275 Cal.App.2d 976, 980-982 [80 Cal.Rptr. 373] [expert testimony was necessary to establish that the failure of the decedent to wear a seat belt was the proximate cause of the injuries suffered].)

However, appellate courts have repeatedly held that expert testimony is unnecessary to a plaintiff's case where the fact sought to be proved is one within the general knowledge of laymen. For example, in *Chaplis* v. *County of Monterey* (1979) 97 Cal.App.3d 249, 263-267 [158 Cal.Rptr. 395], the trial court had ruled that expert testimony was necessary to prove that a building designer and a contractor were negligent in failing to inform plaintiff property owner of the necessity of obtaining building and land use permits before beginning construction of shops and offices on plaintiff's property. In reversing, the Court of Appeal held that since defendants' alleged negligent conduct was unrelated to the technical or mechanical aspects of building design or construction, no expert testimony was needed to prove their alleged negligence.

In *Jorgensen* v. *Beach 'N' Bay Realty, Inc.* (1981) 125 Cal.App.3d 155 [177 Cal.Rptr. 882], the trial court granted defendants' nonsuit motion in part because plaintiff failed to use expert testimony to establish defendants' negligence in the handling of her real estate sale. The Court of Appeal reversed, holding that the duty of care to be exercised by a real estate agent was not beyond the realm of lay jurors' common knowledge. (*Id.,* at pp. 163-164; see also *Godfrey* v. *Steinpress* (1982) 128 Cal.App.3d 154, 185-186 [180 Cal.Rptr. 95] [expert testimony unnecessary on the issue of likelihood that unexpected and serious termite infestation would cause emotional distress to new homeowners]; *People* v. *Stines* (1969) 2 Cal.App.3d 970, 976-977 [82 Cal.Rptr. 850] [expert testimony unnecessary on the question of whether the criminal defendant was intoxicated; lay witness testimony on the defendant's behavior and the amount of his drinking was competent evidence from which the jury could have drawn the inference of intoxication].)

 Evaluated by these standards, proof of an obstruction at the Colusa Street-Friars Road intersection did not require expert testimony. No special expertise was required to show that a driver looking east down Friars Road would have difficulty seeing oncoming westbound traffic. Accordingly, it was error to grant a nonsuit for the City on this ground.

Because all three grounds upon which the City based its motion for nonsuit are inadequate, the judgment entered in the City's favor must be reversed.

■ Plaintiffs also appeal from the judgments entered in favor of FDC and Friars Hollow. Plaintiffs alleged that FDC and Friars Hollow negligently built and maintained the premises at 5750 Friars Road, permitting the sign and trees to block the vision of drivers travelling along Colusa Street and Friars Road. They also alleged that the resulting dangerous condition proximately caused plaintiffs' injuries.

The complaint states two causes of action against FDC and Friars Hollow. The first is based on a negligence theory. ■ Under the common law, a person who creates a dangerous condition on a public roadway or walkway is liable for foreseeable injuries caused thereby. (See, e.g., *Kopfinger* v. *Grand Central Pub. Market* (1964) 60 Cal.2d 852, 857-860 [37 Cal.Rptr. 65, 389 P.2d 529]; *Gibson* v. *Garcia* (1950) 96 Cal.App.2d 681, 683 [216 P.2d 119]; *Barton* v. *Capitol Market* (1943) 57 Cal.App.2d 516, 518 [134 P.2d 847]; cf. Rest.2d Torts, § 368 [adjacent landowner who either creates a dangerous artificial condition on a highway or allows it to remain, is liable for injuries caused thereby].) The second cause of action is based on a nuisance theory. Civil Code section 3479 provides: "Anything which . . . unlawfully obstructs the free passage or use, in the customary manner, of . . . any public park, square, street, or highway, is a nuisance."[10]

FDC and Friars Hollow presented two grounds in support of their motions for nonsuit. First, they argued that the lay testimony offered by plaintiffs was insufficient to establish a dangerous condition. They contended that expert testimony on that issue was necessary. Second, they argued that even if the encroaching sign created a dangerous obstruction, plaintiffs had failed to show that this obstruction caused the collision between the Carson and Kurtz vehicles.

As discussed earlier (see *ante,* pp. 844-845), the first ground is meritless. Whether or not the sign or trees created an obstruction is not an issue so far beyond the competence of a lay jury that it should have been established by expert testimony. Defendants' nonsuit motions cannot be affirmed on that basis.

■ Nor may the nonsuits in favor of FDC and Friars Hollow be affirmed on the ground that the obstruction could not have caused the accident. Viewing all the testimony in plaintiffs' favor and drawing all infer-

---

[10]Section 3493 of the Civil Code provides: "A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise." A public nuisance is defined in section 3480 of the Civil Code as "one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

ences in support of their position, the trial court could not have concluded, as a matter of law, that the alleged obstruction did not cause the collision.

First, there was evidence to support plaintiffs' position that, because of the presence of the sign and trees, drivers entering the intersection from the north were unable to gain an unobstructed view of oncoming westbound traffic until they pulled slightly into Friars Road past its north curb line. Witness Young testified that a southbound driver on Colusa Street preparing to enter the intersection needed to get "a little more than even" with the north curb of Friars Road, "maybe a foot" into the westbound traffic lane of Friars Road in order to get a good view of oncoming traffic. The conflicting testimony of witnesses Varlas and Warner should not have been given any weight for purposes of the ruling on the nonsuit motions. (See *Campbell* v. *General Motors Corp., supra,* 32 Cal.3d at p. 118.)

Further, the only eyewitness (Gomes) who saw decedent's car before it pulled into the intersection, testified that decedent stopped a second time "probably right up to the curbline." When viewed in conjunction with Young's testimony, Gomes' testimony supported plaintiffs' position that decedent was not far enough into Friars Road at her second stop to gain an unobstructed view of oncoming westbound traffic.

In addition, there was testimony from witness Young and a prior statement by witness Warner[11] indicating that driver visibility on Colusa Street at the north side of Friars Road was dependent in part on the size and height of the driver's vehicle.[12] The testimony that decedent was driving a Ford

---

[11]Warner's prior statement was properly admitted pursuant to Evidence Code section 1235, which provides: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with [her] testimony at the hearing and is offered in compliance with Section 770."

Evidence Code section 770 provides: "Unless the interests of justice otherwise require, extrinsic evidence of a statement made by a witness that is inconsistent with any part of [her] testimony at the hearing shall be excluded unless:

"(a) The witness was so examined while testifying as to give [her] an opportunity to explain or to deny the statement . . . ."

[12]At trial, Young was asked, "Now, as far as the sign is concerned—and I'm now speaking of the address sign—it doesn't make any difference which car [Young's MG or LTD] you were driving as far as the sign is concerned; isn't that true?" Young replied, "Yes, it did." A few minutes later he stated, "What I'm saying is there are two ways on that car—living there for close to the year and a half I lived there was with one car, which was a bigger car; it gave me more height, a little more speed to get out into the intersection. You drove completely different out there than if I drove with the MG. . . . You pull up to the line a little bit, look back there, pull up further and hope you didn't miss a car. In the LTD it wasn't as bad, but the MG is a fairly low car, and it's underpowered, too. So getting out in those cars moving fast in the MG, you have to be even more careful."

Warner stated: "The view problem plus the speed of the traffic on Friars Road makes it extremely difficult to pull out, especially if you have a small car like mine which is an Audi Fox, four speed. My car sits low, and it's very difficult to see."

Pinto was uncontradicted. The jury could have inferred that visibility from decedent's car, like that from Young's MG or Warner's Audi Fox, was more seriously affected by the sign and trees than it would have been had the car's driver's seat been higher. Thus, the trial court could not properly have granted nonsuit on the theory that there was insufficient evidence on the issue of causation.

 Friars Hollow asserted a third ground for its nonsuit motion. It contended that, as a matter of law, it could not be liable for any injuries caused by the sign because it neither erected the sign nor owned the property upon which it was located.

This argument lacks merit. A jury could reasonably have inferred from the plaintiffs' evidence that FDC sold the address sign to Friars Hollow along with the condominium complex. In the absence of any evidence to the contrary, it could be inferred that at the time of the accident, Friars Hollow owned the encroaching sign and maintained it for the convenience of its members. Further, an inference could be drawn from the testimony of the condominium complex residents that Friars Hollow should have known that the sign created an obstruction at the intersection.[13] Based upon these inferences, the trial court should have concluded that Friars Hollow could be liable for the alleged obstruction created by the sign. The fact that Friars Hollow neither erected the sign nor owned the property upon which it was located would not preclude recovery on either the negligence or the nuisance theory. Friars Hollow was not entitled to a nonsuit.

Plaintiffs offered credible testimony to support both the existence of a dangerous condition and causation. A review of the testimony in the light most favorable to plaintiffs demonstrates that FDC and Friars Hollow were not entitled to judgment as a matter of law. Therefore, the trial court erred in entering judgments of nonsuit in favor of these defendants.

### III.

Plaintiffs also challenge the trial court's evidentiary rulings on the admissibility of two hearsay statements made by plaintiff Robert Carson to the investigating officer, Varlas, after the accident.

 The first hearsay statement was a response by Varlas to counsel's question: "Tell us what Mr. Robert Carson told you with respect to what

---

[13]Witness Young testified that the sign prevented southbound drivers on Colusa Street from having an unobstructed view of westbound traffic on Friars Road. Richard Alexander testified that he had heard complaints about the Colusa Street-Friars Road intersection during his residency at the complex from November of 1977 to September of 1978.

he observed in the happening of this accident." Plaintiffs raised a hearsay objection and the objection was overruled. Varlas then responded: "Mr. Carson stated to me: 'I was on a motorcycle. I was ahead at the intersection. I looked and saw the traffic was clear for a quarter-mile. I knew I had time to get across. I went. I looked back to see if she had waited. I saw that she had pulled out. I knew then that she didn't have enough time to make it.'" The trial court subsequently explained that the statement was an admission against interest, an exception to the hearsay rule.

The trial court's explanation is somewhat confusing. Carson's hearsay statement was not admissible under the "declarations against interest" exception to the hearsay rule. Evidence Code section 1230, which sets forth the exception, requires that the declarant be "unavailable as a witness." The trial court probably meant to admit Carson's statement on the ground that it constituted the admission of a party pursuant to Evidence Code section 1220.[14] (See generally, McCormick on Evidence (2d ed. 1972) pp. 630-631.)

Plaintiffs argue that Carson's statement is not admissible under Evidence Code section 1220 because it is not relevant to any of the issues in this case. This argument lacks merit.

■■ "Evidence Code section 1220 creates an exception to the hearsay rule for [an] admission of a party. . . . [¶] . . . [S]ection 1220 does not define when a declarant-party's extrajudicial hearsay statement becomes *relevant* to be admissible against such party under the personal admission exception to the hearsay rule. . . . [F]or such a statement to be admissible against a party as an admission, the statement must assert facts which would have a tendency in reason either (1) to prove some portion of the proponent's [defense], or (2) to rebut some portion of the party declarant's [cause of action]." (*People* v. *Allen* (1976) 65 Cal.App.3d 426, 433 [135 Cal.Rptr. 276], italics in original, disapproved on another point in *People* v. *Green* (1980) 27 Cal.3d 1, 39 [164 Cal.Rptr. 1, 609 P.2d 468]; see also *Legg* v. *United Benefit Life Ins. Co.* (1951) 103 Cal.App.2d 228, 229 [229 P.2d 454]; *Pendell* v. *Westland Life Ins. Co.* (1950) 95 Cal.App.2d 766, 776-777 [214 P.2d 392].)

■■ As Kurtz points out, Carson's statement constitutes an admission because it indicates that when decedent pulled into the intersection, there was insufficient time to avoid a collision with Kurtz's vehicle. Carson stated

---

[14]Section 1220 provides: "Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity."

that when he looked back and saw that his wife had pulled out into the intersection, he knew "that she didn't have enough time to make it." This statement implies that Kurtz was not negligent because he could not have swerved or braked in time to prevent the accident. The statement therefore tends to rebut plaintiff's negligence cause of action. Carson's statement was properly admitted as an exception to the hearsay rule under Evidence Code section 1220.

■ Plaintiffs also argue that the trial court erred in refusing to permit testimony of a second hearsay statement made by Robert Carson to the investigating officer, Varlas. On cross-examination, plaintiffs' counsel asked Varlas the following question: "In your conversation with Mr. Carson, didn't he tell you in that conversation that [Kurtz's] car went by him fast?" Kurtz objected and his objection was sustained on the ground that the statement to be elicited was self-serving hearsay. The trial court rejected plaintiffs' contention that the statement was admissible under Evidence Code section 356.

Section 356 permits admission of the remainder of an otherwise inadmissible conversation where a part of the conversation has already been admitted.[15] However, the hearsay objection will be overruled only if the remainder of the conversation is relevant to the portion already admitted, i.e., if it has "'some bearing upon, or connection with, the admission or declaration in evidence . . . .'" (*Rosenberg* v. *Wittenborn* (1960) 178 Cal.App.2d 846, 852 [3 Cal.Rptr. 459]; *People* v. *Williams* (1975) 13 Cal.3d 559, 565 [119 Cal.Rptr. 210, 531 P.2d 778].) Because Carson's statement regarding the speed of Kurtz's car was relevant to his opinion that his wife "didn't have enough time to make it," the statement was admissible under Evidence Code section 356.

Section 356 is applicable even where the primary admission is not ambiguous. (Witkin, Cal. Evidence (2d ed. 1966) § 319, p. 283.) The remainder of an admission will come in if it in any way explains, modifies, qualifies or has relevant reference to the part already introduced. (*People* v. *Gambos* (1970) 5 Cal.App.3d 187, 193 [84 Cal.Rptr. 908], citing *People* v. *Mahach* (1924) 65 Cal.App. 359, 382 [224 P. 130] [discussing the previous version of this rule, former Code Civ. Proc., § 1854].) Here, the second statement appears to explain the first statement. Carson may have felt that his wife could not get through the intersection without being hit due to the speed

---

[15]Section 356 provides in pertinent part: "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; . . . and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation or writing which is necessary to make it understood may also be given in evidence."

with which Kurtz was coming toward her. The self-serving nature of the second hearsay statement does not preclude its admission under Evidence Code section 356. (*Rosenberg* v. *Wittenborn, supra,* 178 Cal.App.2d at p. 852.) Therefore, the trial court erred in refusing to allow witness Varlas to state whether Carson had told him that Kurtz's "car went by him fast."

However, this error was not prejudicial. The speed limit on Friars Road is 50 miles per hour. Kurtz could have been driving fast without exceeding the speed limit. There was no testimony presented that Kurtz was driving over the speed limit or that his speed was unsafe. In fact, Kurtz's estimate of his speed—45 miles per hour—was higher than the estimate made by any other witness. Plaintiffs have not demonstrated a reasonable probability that the result would have been more favorable to them if the second hearsay statement had been admitted. (See *People* v. *Williams, supra,* 13 Cal.3d at p. 566.)

## IV.

The trial court erred in granting the motions for nonsuit filed on behalf of the City, FDC and Friars Hollow. The judgments entered in favor of these defendants are reversed and the cause is remanded. The judgment in favor of defendant Kurtz is affirmed.

Mosk, J., Kaus, J., Broussard, J., Reynoso, J., Grodin, J., and Lucas, J., concurred.