Filed 3/27/13  P. v. Milton CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>WILLIAM MARTINEZ MILTON,<br><br>     Defendant and Appellant. | B238492<br><br>(Los Angeles County<br>Super. Ct. No. NA088326) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Tomson T. Ong, Judge.  Modified and, as modified, affirmed with directions.

Phillip I. Bronson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews, David E. Madeo and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

―――――――――――――

Appellant William Martinez Milton appeals from the judgment entered following his conviction by jury on count 1 – attempted first degree burglary with a person present (Pen. Code, §§ 459, 667.5, subd. (c)(21)) with court findings he suffered a prior felony conviction (Pen. Code, § 667, subd. (d)), a prior serious felony conviction (Pen. Code, § 667, subd. (a)), and a prior felony conviction for which he served a separate prison term (Pen. Code, § 667.5, subd. (b)). The court sentenced appellant to prison for 12 years. We modify the judgment and, as modified, affirm it with directions.

## FACTUAL SUMMARY

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 (*Ochoa*)), the evidence established that on March 7, 2011, Erica Ruvalcaba lived in an apartment at 826 Elm in Long Beach. Her apartment was on the second floor of the rearmost of two buildings which were about 40 feet apart and separated by a courtyard. A fence enclosed the entire apartment complex. Ruvalcaba's apartment had a locked lattice door near the window of her apartment. A laundry room downstairs housed her cats.

About 10:30 p.m. on the above date, Ruvalcaba and her son were in her apartment when Ruvalcaba heard the lattice door shaking a few seconds as if someone were trying to open it. Her porch light was off. Ruvalcaba had not given anyone permission to enter her property. She looked out a window of her apartment but saw no one. Shortly thereafter, Ruvalcaba heard one of her cats scream. Ruvalcaba looked out her window and saw appellant standing downstairs by the laundry room door. He was wearing a cap and a dark jacket. Ruvalcaba ducked and called 911. She continued talking with the 911 operator during the ensuing events. Ruvalcaba looked out her window again but did not see appellant.

The front building had two apartments, one upstairs at 822 Elm and the other downstairs at 824 Elm. About two minutes after Ruvalcaba saw appellant outside the laundry room, she looked out her window and saw that appellant had ascended about two-thirds of the staircase leading to 822 Elm. Ruvalcaba knew appellant was not one of her neighbors.

2

Ruvalcaba testified that appellant, whose back was towards Ruvalcaba, was using his left hand to reach towards the window at 822 Elm and push on it "maybe ten seconds at the least." Ruvalcaba testified there was very dim lighting from the apartment next door, there was lighting from "the other apartment," and she could see clearly.

Ruvalcaba later saw appellant on the porch at 822 Elm. His hand was not extended at that time. Ruvalcaba later looked and appellant was not on the porch.

The front building was the westernmost of the two buildings. A pathway ran alongside the north side of the front building, and the pathway extended from the courtyard westward to a location in front of the front building. The door to 824 Elm was on the north side of the front building, and a walkway led from the pathway to the door of 824 Elm. A portion of that walkway, and the door of 824 Elm, were both inset into the building.

After Ruvalcaba saw that appellant was not on the porch at 822 Elm, she looked again and it appeared appellant was leaving the inset walkway near the door at 824 Elm. Ruvalcaba later looked out her window and saw appellant at the bottom of the staircase that led to 822 Elm. Appellant was using his left hand to wrap around his right hand and arm the jacket he had been wearing. Ruvalcaba then saw appellant was wearing a white shirt. Perhaps a minute later, Ruvalcaba looked out her window and saw appellant wearing the jacket and walking on the pathway.

Ruvalcaba ducked but about two seconds later she looked out her window and saw police detain appellant. Ruvalcaba told the 911 operator that the person police had detained was the person Ruvalcaba had seen. About 15 minutes passed from the time Ruvalcaba had called 911 to the time police arrived. Ruvalcaba did not see anyone else in the courtyard.

Ruvalcaba hung up the phone and, about two to three minutes later, police came to her apartment. She told police that the person whom police had caught inside her building was the person she had seen. Ruvalcaba also identified appellant during a field show-up. At the time, appellant was wearing a white shirt and the jacket. Ruvalcaba did not identify appellant at trial.

3

Meynardo Benitez lived at 822 Elm with his son Abraham Morales. He testified to the effect the window Ruvalcaba had seen appellant push at 822 Elm was Benitez's locked kitchen window that led into his apartment. Benitez gave no one permission to open his window.

Long Beach Police Officer Patrick Dougherty testified as follows. At 10:27 p.m. on March 7, 2011, Dougherty and his partner, in uniform in a marked car, received a call about a burglary in progress at 822 Elm. The officers were told the suspect was wearing a white T-shirt. The officers were dispatched to the location.

At 10:29 p.m., the officers arrived at the location, walked to a locked gate, and saw appellant inside the property and walking towards Dougherty. Dougherty told appellant to stop and get on the ground and appellant complied. A resident gave Dougherty a gate key and Dougherty used it to enter. The officers detained appellant, who matched the suspect's description.

Dougherty searched appellant and found personal checks attached to a checkbook in the right front pocket of appellant's jacket. Dougherty found a cellphone in appellant's pants pocket. Dougherty also recovered from appellant a MetroPCS cellphone. Dougherty asked appellant what appellant was doing there and he explained to Dougherty why appellant was there.

During booking, appellant was wearing a white button-down long-sleeve shirt and appellant told Dougherty that appellant lived at 1085 Walnut in Long Beach. Dougherty gave conflicting testimony regarding whether he remembered that appellant was wearing a black cap. Appellant's booking slip did not refer to a black cap but the slip would have referred to such a cap if appellant had been wearing one at the time of his arrest.

Long Beach Police Detective Jennifer Valenzuela testified as follows. Valenzuela had been a police officer for over 19 years, had been assigned to the burglary detail since 2002, and had conducted over 2,000 burglary investigations. A cat burglary occurred when someone broke into a residence while someone was present. Valenzuela had investigated burglaries during which a person merely had reached through an open window of a house and had taken something. She had also investigated burglaries during which the

4

suspect went around checking doors and windows to see if they were open, and during which the burglar might have used a ladder or something to climb.

Valenzuela testified she interviewed appellant and he told her the following. Appellant climbed the apartment complex fence near the back of 826 Elm. He did not know the phone number of the MetroPCS cellphone but knew the phone number of the other cellphone and claimed both belonged to him. Appellant presented no defense witnesses.

## *ISSUES*

Appellant claims (1) there is insufficient evidence supporting his conviction, (2) the trial court erroneously excluded statements by appellant, (3) the prosecutor committed *Griffin* error, (4) the prosecutor committed misconduct by attempting to shift the burden of proof, (5) the prosecutor committed misconduct by misleading the jury, (6) the prosecutor violated appellant's right to due process by failing to provide a full photographer's report, (7) appellant was entitled to additional precommitment credit, and (8) cumulative prejudicial error occurred.

## *DISCUSSION*

1. *Sufficient Evidence Supported Appellant's Conviction.*

The information alleged appellant attempted to burglarize Benitez's apartment (i.e., the one at 822 Elm). The court instructed the jury on the definitions of attempt and burglary, and there is no dispute those instructions correctly stated the law.[1] The jury convicted appellant of the attempted burglary of Benitez's apartment.

---

[1]    The court, using CALJIC No. 6.00, instructed the jury that an attempt to commit a crime consisted of two elements: (1) a specific intent to commit the crime and (2) a direct but ineffectual act done toward its commission. Using CALJIC No. 14.50, the court instructed that the elements of burglary were: (1) a person entered a building and (2) at the time of the entry, the person had specific intent to steal and take away someone else's property, and intended to deprive the owner permanently of that property.

5

Appellant claims there is insufficient evidence supporting that conviction. We reject the claim. Our power begins and ends with the determination whether there is substantial evidence, contradicted or uncontradicted, to support the judgment. (*People v. Hernandez* (1990) 219 Cal.App.3d 1177, 1181-1182.)

Appellant concedes there is "no shortage of circumstantial evidence to convict appellant of attempted burglary" and concedes he approached more than one residence. We accept the concessions.

Based on the evidence and Valenzuela's testimony, the jury reasonably could have concluded beyond a reasonable doubt appellant was a late night cat burglar who had climbed the apartment complex fence to enter the complex (thereby evidencing consciousness of guilt), he approached apartments and tested their doors and/or windows in an effort to enter an apartment(s) with intent to steal; Benitez's apartment was one such apartment, and appellant pushed on the window of Benitez's apartment to enter and steal. There was sufficient evidence to convince a rational trier of fact, beyond a reasonable doubt, that appellant committed the attempted burglary of Benitez's apartment. (Cf. *Ochoa, supra*, 6 Cal.4th at p. 1206; *People v. Davis* (1938) 24 Cal.App.2d 408, 409; *People v. Gilbert* (1927) 86 Cal.App. 8, 9-10; see *People v. Martone* (1940) 38 Cal.App.2d 392, 393.)[2]

---

[2] Appellant argues certain alleged facts permit a reasonable inference of his innocence; therefore, the People did not meet their burden of proof. In particular, he refers to the alleged facts (1) appellant approached more than one residence, permitting an inference he was looking for someone rather than looking for an apartment to burglarize, (2) appellant did not break the kitchen window of Benitez's apartment, permitting an inference appellant did not intend to break in and enter but was looking for a certain place or person, and (3) appellant did not seek to escape and was cooperative with police, permitting inferences he lacked consciousness of guilt. He also refers to the alleged fact there was no evidence he tried to enter through the front door of Benitez's apartment, permitting an inference he was not looking for an unlocked door, and refers to the alleged facts appellant was not carrying something containing burglar tools, he was not wearing gloves to protect against leaving identification evidence, and his fingerprints were not found on Benitez's kitchen window. However, even if the above alleged facts permitted a reasonable inference of appellant's innocence that might have led a jury to acquit him,

6

2. *The Trial Court Did Not Erroneously Exclude Appellant's Statement.*

  a. *Pertinent Facts.*

  During direct examination, Valenzuela testified he interviewed appellant and appellant told Valenzuela how appellant entered the courtyard. Valenzuela also testified to the effect appellant told Valenzuela that a fence separated the apartment complex from the property north of the complex, and appellant entered the complex by climbing that fence near the back of 826 Elm. Later, outside the presence of the jury, appellant argued he should be "permitted to go into" the remainder of the statement pursuant to Evidence Code section 356.

  The court later read into the record appellant's statement, which appellant apparently made to Valenzuela and a detective Kennedy. We quote below the trial court's reading of the statement, and italicize portions that incriminate and/or impeach appellant as discussed *post*. The court stated, "Here is the statement. Actually it is to detective Kennedy. [¶] *Milton said he had gone to the property where he was arrested to find a guy named Eddie.* According to Milton, *Eddie stole from him approximately a week earlier near the Superior warehouse at 10th and Long Beach Boulevard.* [¶] Milton was told by *Miguel* that Eddie lived there. *Milton could not provide any information about Miguel.* Milton said that Eddie was a male Hispanic, 23 years old, weighing 155 and he sells weed. *Milton said he had known Eddie for three weeks*, but does not have a phone number for him. [¶] *Milton said he used meth and was 'sketching.' He admits to us that the pipe in his possession was his and he used it to smoke methamphetamine.* Milton said on the day he was arrested he went to Eddie's *to beat the shit out of him and get his [iPod] back.*" (Italics added.)

  The court continued, "Milton said he went down to the side of the property to the north of 822 to 826 and climbed over the fence to the rear side of the building. Milton said he went up to the back steps of the building and *saw Eddie's dad through the window so he*

---

there was substantial evidence supporting the jury's verdict to convict him; therefore, we affirm the judgment of conviction.

7

*went back downstairs*. He denied ever touching the window from the stairs or trying to open it." (Italics added.)

The court continued, "Milton, he said it was very cold so he *decided to go into the laundry room to get warm by turning on the dryer. Milton said he used the dryer for about an hour then he decided to leave.* [¶] That was when the police showed up and he was arrested. I asked Milton if the dryer was coin operated. He said yes and he put money in it. I asked Milton if he ever went to the area under the back of the stairs where Eddie lived. *Milton denied going to any other door* or window on the property." (Italics added.)

The court, continuing to read, said, "I asked Milton if the two cell phones he had on him at the time of . . . his arrest belonged to him. Milton said they were both his. *He had the black Metro cell phone with a skull on the back for two months. He said he keeps it because . . . all of his contacts are in the phone. Milton could not tell me the number for this phone. Milton stated he had the Metro PCS phone with the blue cover for three days. He told me the number for that . . . [phone].*" (Italics added.)

The court continued, "I asked Milton about the checks that were in his possession at the time of his arrest. *Milton said he was 'sketching' on meth* and found them *somewhere*. I asked if he ever tried to use the checks. He said no. *Milton said the checks all had old dates on them. I pointed out there was a check filled out and dated 3-6-11,* for Metro PC, (562) 666-1952. *I asked him if he filled out this check or knew who filled it out. He said no. I asked him if he knew any number (562) 666-1952 and he said no.*" (Italics added.)

Continuing reading, the court stated, "*I asked Milton if he ever wrapped his lower arm with anything. He said no. Milton asked why he would do that, and I told him that some people wrap their arm before breaking a window. I asked him if he ever tried to open the window and reach in and try to touch the windows. I told Milton that I had witnesses that saw him do all these things and he was becoming agitated and asked what I wanted. Milton said, 'what do you expect me to do, tell you the truth?' I asked Milton that I wanted the truth, and he became more agitated and started raising his voice.*" (Italics added.)

8

The prosecutor objected, in pertinent part, that Evidence Code section 356 permitted evidence only on the subject of how appellant entered the backyard, otherwise, the remainder of his statement was beyond the scope of direct examination, irrelevant, excludable under Evidence Code section 352, and hearsay, and, if appellant wanted his statements admitted into evidence, he should testify.

Appellant argued, inter alia, he was entitled to cross-examine Valenzuela about the remainder of appellant's statement, i.e., about appellant's statements other than his statement he climbed the fence near the back of 826 Elm, because they evidenced he had a legitimate reason to climb the fence and to be on the apartment complex property. Appellant's counsel acknowledged that if the court granted his request, the prosecutor could introduce, pursuant to Evidence Code section 356, additional portions of appellant's statement that "don't help [appellant]" and there might be a "downside risk" for appellant. Appellant's counsel argued appellant's mere statement to Valenzuela that appellant had climbed over the fence implied appellant had entered the property for an illegal purpose and "not for some [other] reason, wrong as it may have been."

Following argument, the trial court ruled that, pursuant to Evidence Code section 356, appellant could ask Valenzuela if appellant had said he had climbed the fence " 'because the property is fenced all around' " and appellant could not otherwise have gained entry. However, the trial court also ruled appellant could not ask Valenzuela if appellant had said he had climbed the fence "because 'I went to recover' and all that other stuff." The court indicated evidence on the former issue was admissible because it "explain[ed] the conduct of climbing, not the purpose." The court indicated any other statements by appellant were self-serving hearsay.

b. *Analysis.*

Appellant claims the trial court erroneously failed to admit, under Evidence Code section 356, testimony from Valenzuela concerning the remainder of appellant's statement to Valenzuela to the extent it explained why he climbed the fence and was on the apartment complex property. We conclude the claim is unavailing.

9

Evidence Code section 356 provides, in pertinent part, "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party." "The purpose of this section is to prevent the use of selected aspects of a conversation, act, declaration, or writing, so as to create a misleading impression on the subjects addressed." (*People v. Arias* (1996) 13 Cal.4th 92, 156 (*Arias*).)

" 'In applying Evidence Code section 356 the courts do not draw narrow lines around the exact subject of inquiry. "In the event a statement admitted in evidence constitutes part of a conversation or correspondence, the opponent is entitled to have placed in evidence all that was said or written by or to the declarant in the course of such conversation or correspondence, provided the other statements have *some bearing upon, or connection with,* the admission or declaration in evidence. . . ." [Citations.]' [Citation.]" (*People v. Zapien* (1993) 4 Cal.4th 929, 959.) The requirement that the remaining statements have some bearing upon, or connection with, the admission or declaration in evidence is a requirement of relevance. (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 850 (*Carson*).)

If the remaining statements are relevant, the fact they are self-serving does not preclude their admission into evidence under Evidence Code section 356. (*Arias, supra,* 13 Cal.4th at p. 156; *Carson*, *supra*, 36 Cal.3d at p. 851.) Moreover, section 356 is an exception to the hearsay rule. (*People v. Vines* (2011) 51 Cal.4th 830, 861; *People v. Pic'l* (1981) 114 Cal.App.3d 824, 863, fn. 13.)

Even if the trial court erred, it does not follow we must reverse the judgment. We have quoted the trial court's recitation of appellant's statement to Valenzuela. It included appellant's statement as to how he entered the property (i.e., by climbing the fence near the back of 826 Elm). The remainder of appellant's statement included his statements as to why he climbed the fence and was on the apartment complex property.

We previously have italicized the incriminating portions of the remainder of appellant's statement and we will not recite them again here. Suffice it to say that the remainder of appellant's statement included statements incriminating and/or impeaching

10

him, such as his statement he was using methamphetamine, and his question implying he would not tell the truth to Valenzuela. If the trial court had admitted into evidence pursuant to Evidence Code section 356 the remainder of appellant's statement to the extent it explained why he climbed the fence and was on the apartment complex property, the trial court also would have been required pursuant to that section to admit into evidence the remainder to the extent it incriminated and/or impeached him.

In sum, even if the trial court erroneously failed to introduce, pursuant to Evidence Code section 356, appellant's statements concerning why he had climbed the fence and why he had been on the apartment complex property, the error was not prejudicial since it is not reasonably probable appellant would not have been convicted of attempted burglary absent the alleged error. (Cf. *People v. Pride* (1992) 3 Cal.4th 195, 235-236; *People v. Williams* (1975) 13 Cal.3d 559, 566; *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)

3. *The Prosecutor Did Not Commit Griffin Error, Shift the Burden of Proof, or Mislead the Jury.*

  a. *Pertinent Facts.*

During argument to the jury, appellant asked the jury to assume a person was visiting a friend at the location. Appellant then argued as follows. The person would have to climb the fence or get the friend's attention to come down and unlock the gate. There were therefore two reasonable interpretations as to the person's purpose for entering. One interpretation, that the person was there to visit, pointed to the person's innocence. The other interpretation was the person could have been there to do wrong. The jury had to accept the reasonable interpretation pointing to innocence.

During rebuttal argument, the prosecutor commented, "First of all, . . . to be visiting a friend, you need to have a friend at the location. *There is no evidence that Mr. Milton had a friend at that location.* That's something that Mr. Fuller [defense counsel] is arguing. *You didn't hear any testimony about any friend.* Nobody knew him. That was

11

the testimony on the witness stand under oath. So that's not a reasonable interpretation." (Italics added.)[3]

      b. *The Prosecutor Did Not Commit Griffin Error.*

      Appellant claims the prosecutor committed *Griffin*[4] error by commenting there was no evidence appellant had a friend at the location. We conclude otherwise. First, appellant waived the issue by failing to object to the comment on that ground. (Cf. *People v. Bruce G.* (2002) 97 Cal.App.4th 1233, 1244.)[5]

      As to the merits, we reject appellant's claim. *Griffin* holds it is error for a prosecutor to comment, directly or indirectly, on the failure of the defendant to testify. (*People v. Hughes* (2002) 27 Cal.4th 287, 371-372.) As a result, the prosecutor may not "refer to the absence of evidence that only the defendant's testimony could provide." (*Id.* at p. 372.) The prosecutor may, however, comment "on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses." (*People v. Hovey* (1988) 44 Cal.3d 543, 572.) In determining whether *Griffin* error has

---

[3]     At 11:30 a.m. on December 8, 2011, the jury retired to begin deliberations, and the jury had a lunch break from 12:00 noon to 1:30 p.m. During the afternoon, the jury requested readbacks of the testimony of Ruvalcaba and Dougherty, a readback of Ruvalcaba's testimony followed, and the jury later withdrew its request for a readback of Dougherty's testimony. The jury rendered a verdict that afternoon.

[4]     *Griffin v. California* (1965) 380 U.S. 609 [14 L.Ed.2d 106] (*Griffin*).

[5]     Appellant argues an objection would have been futile because a trial court which, notwithstanding Evidence Code section 356, excluded appellant's complete statement to Valenzuela would not have sustained a *Griffin* objection. We reject appellant's argument. We cannot infer from the trial court's state law evidentiary ruling what the trial court might have done concerning appellant's constitutional objection to the prosecutor's jury argument. Moreover, because, as discussed below, there were several potential witnesses whom appellant might have called to testify on the issue of whether appellant had a friend at the location, and these potential witnesses provided a basis for the prosecutor's comment, the trial court properly could have overruled a *Griffin* objection for a reason having nothing to do with appellant's statement to Valenzuela. For similar reasons we reject appellant's arguments that it would have been futile for him to object that the prosecutor attempted to shift the burden of proof and that the prosecutor misled the jury, issues we discuss *post.*

occurred, we ask whether there is a reasonable likelihood that jurors could have understood the prosecutor's comments to refer to the defendant's failure to testify. (*People v. Clair* (1992) 2 Cal.4th 629, 663.)

In the present case, the prosecutor's comment there was no evidence appellant had a friend at the location never directly or expressly referred to appellant's failure to testify. Except for the two previously italicized statements in the prosecutor's remarks, the prosecutor never referred to the absence of testimony or evidence, much less the absence of testimony from appellant.

It appears there were only two apartment buildings separated by about 40 feet in the complex, each building contained only two residences, and the complex was small enough for Ruvalcaba to testify she knew all her neighbors. If appellant had a friend in the complex, nothing prevented appellant from calling witnesses who might have testified to that fact. This included Ruvalcaba's son, Ruvalcaba's neighbors, Benitez, Morales, and the resident who gave the gate key to Dougherty. Moreover, assuming Miguel, Eddie's father, and Eddie existed, appellant might have called them to testify as well.[6] The prosecutor reasonably could have believed that if appellant had a friend at the location, one or more of these several potential witnesses might have seen appellant, the friend, and/or both of them on the premises on a previous occasion(s).

The prosecutor was entitled to comment on appellant's failure to introduce material evidence or to call logical witnesses. Appellant has failed to demonstrate the prosecutor commented upon the absence of evidence that only appellant's testimony could have provided. The prosecutor's remaining quoted remarks were fair comment on the evidence. (See *People v. Hill* (1998) 17 Cal.4th 800, 819 (*Hill*).) We conclude no *Griffin* error occurred because there is no reasonable likelihood jurors could have understood the prosecutor's challenged comment to refer to appellant's failure to testify. (Cf. *People v.*

---

[6] Notwithstanding appellant's argument to the contrary, the fact "Eddie" might have invoked his right against self-incrimination did not make him unavailable; only if he had been called and sworn as a witness, and had invoked his right against self-incrimination, would he have been unavailable. (*People v. Ford* (1988) 45 Cal.3d 431, 439-442.)

*Bradford* (1997) 15 Cal.4th 1229, 1339-1340; *People v. Medina* (1995) 11 Cal.4th 694, 756; *People v. Sanders* (1995) 11 Cal.4th 475, 527-528.)

Moreover, there was ample evidence of appellant's guilt. Further, during its final charge to the jury, the court gave various instructions which we presume the jury followed.[7] (Cf. *People v. Sanchez* (2001) 26 Cal.4th 834, 852.) Further still, " 'brief and mild references to a defendant's failure to testify, without any suggestion that an inference of guilt be drawn therefrom, are uniformly held to constitute harmless error.' " (*People v. Turner* (2004) 34 Cal.4th 406, 419-420.) No prejudicial *Griffin* error occurred. (Cf. *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705] (*Chapman*).)

     c. *The Prosecutor Did Not Attempt to Shift the Burden of Proof.*

Appellant claims the prosecutor's comment there was no evidence appellant had a friend at the location was prosecutorial misconduct that shifted to appellant the burden to prove the friend's existence beyond a reasonable doubt; therefore, the comment was a misstatement of law. The claim is unavailing. Appellant failed to object on the ground of prosecutorial misconduct and failed to request a jury admonition with respect to the prosecutor's comment, which would have cured any harm. Appellant waived the issue of whether the prosecutor committed misconduct. (Cf. *People v. Gionis* (1995) 9 Cal.4th 1196, 1215; *People v. Mincey* (1992) 2 Cal.4th 408, 471; see fn. 5, *ante*.)

As to the merits, to prevail on a claim of prosecutorial misconduct based on remarks to the jury, appellant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. (*People v. Dykes* (2009) 46 Cal.4th 731, 771-772.) In the present case, the prosecutor neither directly nor indirectly commented upon a burden of proof on appellant. As mentioned, the prosecutor was entitled to present fair comment on appellant's failure to introduce material evidence or to

---

[7]    The court gave CALJIC No. 1.02 [attorneys' statements not evidence], CALJIC No. 2.11 [production of all available evidence not required], CALJIC No. 2.60 [no inference of guilt may be drawn from appellant's failure to testify], CALJIC No. 2.61 [appellant may rely on the state of the evidence], and CALJIC No. 2.90 [presumption of innocence and People's burden of proof beyond a reasonable doubt].

14

call logical witnesses.  No prosecutorial misconduct occurred.  Moreover, any prosecutorial misconduct was not prejudicial for the same previously discussed reasons any *Griffin* error was not prejudicial.  (Cf. *Watson*, *supra*, 46 Cal.2d at p. 836; *Chapman*, *supra*, 386 U.S. at p. 24.)

        d. *The Prosecutor Did Not Mislead the Jury During Argument.*

        Appellant claims the prosecutor's comment that there was no evidence appellant had a friend at the location was prosecutorial misconduct which misled the jury because the remainder of appellant's statement to Valenzuela provided such evidence but the trial court excluded that remainder after the prosecutor argued for its exclusion.  However, appellant failed to object on the ground of prosecutorial misconduct and failed to request a jury admonition with respect to the prosecutor's comment, which would have cured any harm.  Appellant waived the issue of whether the prosecutor committed misconduct (see fn. 5, *ante*).

        Moreover, as to the merits, a prosecutor's intemperate behavior violates the federal Constitution when it comprises a pattern of conduct so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.  Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.  A prosecutor is given wide latitude during argument.  The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom.  (*Hill, supra,* 17 Cal.4th at p. 819.)

        In the present case, at the time of the prosecutor's rebuttal argument, the prosecutor reasonably could have believed nothing had prevented appellant from calling one or more of the several potential witnesses we previously have identified to testify Eddie existed, lived at the apartment complex, or was appellant's friend, and/or that appellant previously had visited the complex.  The prosecutor's argument did not deny appellant due process, nor was it a deceptive or reprehensible method to attempt to persuade the jury.  No prosecutorial misconduct occurred.

15

*People v. Daggett* (1990) 225 Cal.App.3d 751 (*Daggett*) and *People v. Frohner* (1976) 65 Cal.App.3d 94 (*Frohner*), cited by appellant, do not help him. In *Daggett*, the defendant allegedly committed sexual offenses against a victim. The trial court erroneously excluded evidence that others previously had committed sexual offenses against the victim, but the trial court admitted evidence suggesting the victim previously had sexually victimized others. The prosecutor argued to the jury that if the victim sexually victimized others, the victim must have learned that behavior from the defendant. The prosecutor thus knew his argument conflicted with the excluded evidence that might have refuted his argument (*Daggett,* at pp. 757-758) and the prosecutor thereby "unfairly took advantage of the judge's ruling." (*Id.* at p. 758.) We note that nothing in *Daggett* suggests there was evidence upon which the prosecutor could have based his argument other than the erroneously excluded evidence and the evidence suggesting the victim had sexually victimized others.

Unlike the appellate court in *Daggett*, we have not concluded the trial court erroneously excluded evidence, i.e., the evidence of the remainder of appellant's statement to Valenzuela. Moreover, leaving aside the remainder of appellant's statement, we note there were, as previously discussed, several potential witnesses whom appellant could have called to testify on the issues that Eddie existed, lived at the apartment complex, or was appellant's friend, and/or that appellant previously had been on the premises. Unlike the case in *Daggett*, in the present case there was evidence, other than excluded evidence, upon which the prosecutor could have based his argument. A prosecutor is given wide latitude during argument, and these multiple potential witnesses whom appellant did not call provided a basis for the prosecutor's fair comment there was no evidence appellant had a friend at the location.

In *Frohner*, the prosecutor, knowing a witness was unavailable and could not be subpoenaed, argued to the jury the defendant could have subpoenaed that witness. *Frohner* concluded the comment was inexcusable and the prosecutor's only apparent reason for making it was improper, i.e., to suggest the defendant purposely had failed to call the witness. (*Frohner, supra,* 65 Cal.App.3d at pp. 108-109.)

16

In the present case, the trial court excluded a portion of the remainder of appellant's statement to Valenzuela (i.e., appellant's statement he climbed the fence "because 'I went to recover' and all that other stuff"), but the prosecutor never argued to the jury that appellant could have introduced that portion into evidence. Moreover, apart from appellant's statement, the above mentioned several potential witnesses provided a basis for the prosecutor' s argument. Finally, in light of the ample evidence of appellant's guilt and the previously discussed instructions, the alleged prosecutorial misconduct was not prejudicial. (*Watson*, *supra*, 46 Cal.2d at p. 836.)

4. *No Brady Violation Occurred.*

After the jury rendered their verdict, the court on January 5, 2012, called the case for further proceedings and the prosecutor later indicated as follows. On January 5, 2012, the prosecutor talked with Nancy Preston, a criminalist. Preston said that on March 9, 2011, she went to the location and took photographs and fingerprints. She said she did not see any handprints on the window in question, but both panes of the window were dirty. Photographs of the window were provided to appellant as part of discovery, but there was "no specific statement about there not being a handprint."

Appellant's counsel represented as follows. He had received a report indicating there were "no prints lifted," but the report did not indicate there were no visible handprints on the window. Appellant allegedly intended to enter that window; therefore, evidence there were no visible handprints on the window was critical evidence he did not touch it. Appellant's counsel had filed a motion for a new trial and, based on the above, he wanted to add as a ground for the motion that there was newly-discovered evidence.

The court indicated as follows. Appellant had not put his argument in writing; therefore, the court would rule on the issue without delay. The jury heard argument there was no evidence appellant's fingerprints were on the window. Whether the reason for the absence of fingerprints was there were no prints, or no prints were lifted, was irrelevant. The stronger argument for appellant might have been there were prints on the window but no prints of appellant had been lifted. The court denied appellant's "motion."

17

Appellant claims the prosecutor committed a *Brady*[8] violation by not disclosing to appellant there were no visible handprints on Benitez's window. We disagree. "The federal due process clause prohibits the prosecution from suppressing evidence materially favorable to the accused. . . . [¶] For *Brady* purposes, evidence is favorable if it helps the defense or hurts the prosecution, . . . Evidence is material if there is a reasonable probability its disclosure would have altered the trial result. [Citation.]" (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1132.)

There is no need to decide whether the information that there were no visible handprints on Benitez's window was favorable to appellant. "Because *Brady* and its progeny serve 'to restrict the prosecution's ability to suppress evidence rather than to provide the accused a right to criminal discovery,' the *Brady* rule does not displace the adversary system as the primary means by which truth is uncovered. [Citation.] Consequently, 'when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim.' [Citations.]" (*People v. Morrison* (2004) 34 Cal.4th 698, 715.)

In the present case, appellant received discovery indicating no prints were lifted. He knew or should have known one explanation why no prints were lifted might have been that none were there. The record fails to demonstrate anything other than once appellant received discovery indicating no prints were lifted, he failed to exercise reasonable diligence to determine whether the reason no prints were lifted was none were there, or prints were there but none were lifted.

Moreover, there is no dispute the jury heard argument there was no evidence appellant's fingerprints were on the window,[9] and there is no dispute there was in fact no such evidence. If there was no such evidence, the fact the reason for the absence of that

---

[8]     *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215].

[9]     Appellant argued to the jury there was no evidence of fingerprints, and no testimony about a handprint, on Benitez's window.

18

evidence was there were no prints on the window, and not merely that any fingerprints on it were not appellant's, was not constitutionally material; either way, the jury received the critical evidence appellant did not touch the window. There was ample evidence appellant committed attempted burglary even if he never touched Benitez's window. There was no reasonable probability that disclosure of the fact that there were no visible handprints on the window would have altered the trial result.

5. *Appellant is Entitled to Additional Precommitment Credit.*

Appellant was arrested on March 7, 2011, and remained in custody until the court sentenced him on January 11, 2012, a total of 311 days, inclusive. At the sentencing hearing, the court asked appellant to calculate his precommitment credit. Appellant indicated he was entitled to 345 days of precommitment credit, consisting of 300 days of custody credit and 45 days of conduct credit. The court replied, "All right. We are in recess. Thank you." The abstract of judgment reflects the court awarded appellant 345 days of precommitment credit as categorized by appellant.

Appellant claims he is entitled to 450 days of precommitment credit, consisting of 300 days of custody credit and 150 days of conduct credit. Respondent effectively concedes appellant is entitled to same. There is no dispute the trial court awarded custody credit and conduct credit. However, both awards were erroneous.

Appellant is entitled to 465 days of precommitment credit, consisting of 311 days of custody credit and 154 days of conduct credit. (*People v. Smith* (1989) 211 Cal.App.3d 523, 525-527; Pen. Code, §§ 2900.5, subd. (a), 4019.) We will modify the judgment accordingly and direct the trial court to correct its abstract of judgment. (Cf. *People v. Humiston* (1993) 20 Cal.App.4th 460, 466, fn. 3; *People v. Solorzano* (1978) 84 Cal.App.3d 413, 415, 417.)[10]

---

**10** In light of our previous discussion, we conclude no prejudicial cumulative error occurred.

19

## *DISPOSITION*

The judgment is modified by the addition of 11 days of custody credit pursuant to Penal Code section 2900.5, subdivision (a), and by the addition of 109 days of conduct credit pursuant to Penal Code section 4019, for a total precommitment credit award of 465 days and, as modified, the judgment is affirmed. The trial court is directed to forward to the Department of Corrections an amended abstract of judgment reflecting the above modification.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

CROSKEY, Acting P. J.

ALDRICH, J.

20