Filed 7/3/23  Rodriguez v. Colorado CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JOHN RODRIGUEZ,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>EMILIO COLORADO,<br><br>Defendant and Appellant. | B318828<br><br>(Los Angeles County<br>Super. Ct. No. BC665690) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Peter A. Hernandez, Judge.  Affirmed.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Tracy D. Forbath and Philip N. Blanco for Defendant and Appellant.

Law Offices of Mauro Fiore, Jr., Mauro Fiore, Jr., Krystale L. Rosal; Law Offices of Lisa J. Jackson and Lisa J. Jackson for Plaintiff and Respondent.

———————————————

John Rodriguez sued Emilio Colorado for the injuries Rodriguez suffered when Colorado's vehicle collided with Rodriguez's motorcycle. The jury found Colorado responsible for 100 percent of Rodriguez's damages.

On appeal from the judgment in favor of Rodriguez, Colorado contends the trial court erred in refusing to instruct the jury concerning the liability of the public entities responsible for the dangerous condition of the public property on which the accident occurred. He also contends the trial court erred by omitting the cities from the special verdict form, which precluded the jury from determining the cities' proportionate fault for Rodriguez's injuries. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Rodriguez's Complaints, the Defendants' Cross-complaints and the Settlements*

On June 20, 2017 Rodriguez filed a complaint (Los Angeles Superior Court Case No. BC665690) against the City of Irwindale, the California Department of Transportation (Caltrans), the County of Los Angeles, Tony Lai and Doe defendants.[1] He alleged he was riding his motorcycle south on Azusa Canyon Road and approaching the intersection with Nubia Street when he was struck by a vehicle driven by Colorado, who was turning from eastbound Nubia Street onto Azusa Canyon Road. Rodriguez asserted the governmental entities were liable for the dangerous condition of public

---

[1] Rodriguez subsequently filed requests for dismissal of Caltrans and the County of Los Angeles. We augment the record on our own motion to include Rodriguez's December 14, 2017 request for dismissal of Caltrans. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

2

property, the intersection. He specifically alleged the public entities improperly failed to cut or trim the trees, shrubbery and other vegetation to allow visibility; failed to restrict public parking along the curbs at the intersection to allow for better visibility for motorists entering the intersection; and failed to provide adequate and proper warnings and signs (traffic signals, flashing lights) about the intersection's condition. He further alleged that the entities knew motorists pulling out from Nubia Street at the intersection with Azusa Canyon Road could not see or judge the speed, distance or existence of traffic on Azusa Canyon Road and that the dangerous conditions were unknown to motorists using the roadway, creating a trap at the intersection. As for Lai, Rodriguez alleged he was negligent in maintaining his property, a lot on Nubia Street at the intersection, and allowed vegetation in his yard to become so overgrown that it obscured the vision of motorists, including Colorado.

In November 2017 Rodriguez amended his June 2017 complaint by substituting the City of Baldwin Park for a Doe defendant. In December 2017 Baldwin Park filed a cross-complaint against Lai for contribution, equitable comparative indemnity, total equitable indemnity and other causes of action. Irwindale subsequently filed a cross-complaint alleging causes of action that included contribution, partial equitable indemnity and total equitable indemnity against Colorado and Lai; and Lai filed a cross-complaint alleging causes of action that included contribution and equitable indemnity against Irwindale, Baldwin Park and Colorado.

In February 2018, in a separate action (Los Angeles Superior Court Case No. BC693398), Rodriguez filed a complaint

against Colorado for negligence. Rodriguez alleged Colorado negligently operated his vehicle, causing it to collide with Rodriguez's motorcycle. In July 2018 the trial court ordered Rodriguez's two cases consolidated. In August 2018 Colorado filed a cross-complaint against Irwindale, Baldwin Park and Lai for indemnity and contribution, alleging Rodriguez sustained injuries as a result of the three cross-defendants' negligence.

In 2020, after Rodriguez settled with Irwindale and Lai, the trial court granted Irwindale's and Lai's motions for determination of good faith settlement. Rodriguez filed requests for dismissal with prejudice as to Lai and Irwindale. On August 23, 2021 Rodriguez filed a Judicial Council form notice of settlement of entire case, with the words "of entire case" crossed out. The notice stated a request for dismissal would be filed no later than October 25, 2021 and included the words "Only as to Defendant, City of Baldwin Park."[2] Baldwin Park moved for a determination of good faith settlement on August 30, 2021. At the September 7, 2021 final status conference Colorado's counsel said he did not oppose the good faith settlement motion, and the trial court granted the motion. The court told Baldwin Park's counsel, without objection from any of the parties, that Baldwin Park was no longer in the case and referred to Colorado as the remaining defendant.[3]

---

[2] We have omitted, where unnecessary, the capitalization of letters, underlining, italics and bold font in documents quoted.

[3] We augment the record on our own motion to include the court's September 7, 2021 order granting Baldwin Park's motion for good faith determination of settlement.

4

2. *The Jury Trial*

The jury trial against Colorado commenced on September 9, 2021.  In his testimony Rodriguez explained that on June 9, 2016, the date of the accident, he was riding his motorcycle south on Azusa Canyon Road, which had two lanes in that direction; wearing a helmet; moving at the 40-mile-per-hour speed limit; and traveling in the number one lane—the lane closer to the center of the road—rather than the number two lane, to avoid any car coming out of a driveway or street.  He also testified there were two large work vans parked on the curb of Azusa Canyon Road and at the corner of the intersection with Nubia Street.  The parked vans—as well as a big tree with overhanging branches on Lai's property on the intersection's corner—blocked Rodriguez's view of the intersection.  Asked to look at the red curb in a picture, he testified the cars had been parked at that location but not all of the curb had been painted red at the time of the accident.

Colorado testified he intended to make a left turn from Nubia Street to travel north on Azusa Canyon Road.  When he reached the stop sign on Nubia Street at the intersection, he noticed there was no stop sign or traffic light at the intersection for Azusa Canyon Road.  He checked the road for traffic, but there were cars to the side, parked along the curb line, that obstructed his view.  He pulled forward, but still could only see a little bit of the southbound traffic on Azusa Canyon Road.  Although he "couldn't really see" and acknowledged it would have been better to be certain the road was clear before starting a left turn across the road's southbound lanes, he decided to proceed with the turn because he nevertheless thought it was safe.

5

Rodriguez's medical expert provided testimony concerning Rodriguez's injuries. Rodriguez's nephew testified regarding the physical and mental effects of the accident on Rodriguez.

Finally, the parties played clips of the videotaped deposition testimony of Felix Lee, an expert in accident reconstruction retained by Rodriguez, and Ed Ruzak, a highway engineer whom Rodriguez also hired to provide his expert opinion. No witnesses from Irwindale or Baldwin Park were called. The parties did not introduce into evidence any photographs of the accident scene that may have been taken on, or shortly after, the date of the collision.

   a. *Lee's expert testimony*

After he was retained by Rodriguez, Lee visited the scene of the accident[4] and took measurements and photographs, including photographs using a drone, as part of his accident reconstruction analysis. Lee explained he manipulated the drone photographs by adding in "vehicles and whatnot" and, to create the general background for his reconstruction, overlaid an image from Google Earth from "around the . . . date of [the] incident" on stitched-together drone photographs.

Lee opined that the presence of vehicles parked along the northwest curb of Azusa Canyon Road obstructed the sight line between Rodriguez and Colorado, leading to their collision. In support of his opinion Lee testified the amount of time required for a vehicle making a typical left turn to clear all the southbound

---

[4] Lee testified he visited the scene of the June 2016 accident on February 17th without indicating whether it was February 17, 2017, which would have been before Rodriguez filed his complaint, or a date closer to the September 2021 trial.

lanes was five seconds.  Taking into account those five seconds and the 40-mile-per-hour speed limit, Lee calculated a driver at the intersection would need 300 feet of visibility to make a safe left-hand turn.  Because of the presence of "the Astro van," however, Colorado would have had to move up to the number two lane on Azusa Canyon Road to have visibility of 300 feet:[5] Colorado only had 150 feet of visibility due to the parked vehicle.  Lee's reconstruction, which took into account factors such as the placement of "those two vans" and the assumed trajectory of a probable left turn, showed Colorado was first able to see Rodriguez's motorcycle in the number one lane at 2.3 seconds before impact.  Given the typical perception-reaction time of about 1.5 seconds, Lee believed that provided only eight-tenths of a second to make a maneuver.  By then, based on Lee's reconstruction, Colorado was only 45 feet from Rodriguez's motorcycle, and "you can't really avoid the incident at that position."

The jury was shown Lee's presentation slides of his sight line analysis.  The slides recreated Colorado's vantage point, with visual depictions of the parked vans, at varying seconds before impact.  Lee's slides, including those recreating Colorado's vantage point at 2.3 seconds and 4 seconds before the collision, showed a line of four vehicles, the first two of which were vans, parked on a road perpendicular to the one marked Nubia Street.  The vans were shown parked close to the intersection, with a hydrant on the corner nearest to the parked vans.  Red curbing around the hydrant was depicted extending down the road

---

[5]     Lee believed it was reasonable for a motorist attempting Colorado's maneuver who could not see enough of the road to inch forward toward Azusa Canyon Road.

7

toward the vehicles and next to at least the parked vans. Lee's analysis did not take into consideration the foliage because, although there was testimony describing it as hanging over the curb and he knew the location of the tree, there were no photographs of the foliage taken at the time of the incident. Accordingly, he did not have enough information to accurately represent it.

### b. *Ruzak's expert testimony*

Ruzak opined that Baldwin Park failed to take reasonable measures to mitigate the sight line problem for traffic traveling from Nubia Street onto Azusa Canyon Road. Ruzak explained, because Nubia was a minor residential street coming onto a major, wide arterial, it necessitated a sight distance in concert with Caltrans/AASHTO[6] guidelines "if they so choose to use those."[7] Ruzak explained the sight lines "that were available" with the cars parked "along the area that would be approximate to the little bit of red curb I think that was there" were, as best as he could ascertain, much shorter than recommended in the guidelines. Using Lee's opinion that there were only 150 feet of visibility, a stopping sight distance of 300 feet and a corner sight distance of 440 feet, Ruzak believed the sight lines were "woefully

---

[6] Although not explained by Ruzak, AASHTO is the American Association of State Highway and Transportation Officials. (*Cordova v. City of Los Angeles* (2015) 61 Cal.4th 1099, 1104.)

[7] Ruzak based his opinion in part on Caltrans's Highway Design Manual, which sets forth intersection design standards relating to sight distance; but he reiterated the standards were not mandatory.

inadequate" and "the potential for a crash with someone coming out of Nubia would be expected."

In Ruzak's opinion Baldwin Park failed to have sufficient red curb or no parking or no stopping signage to provide adequate sight distance on Nubia Street. In contrast, Baldwin Park "did this particular curb no parking situation" at the Sandstone intersection located just to the north on Azusa Canyon Road. Sandstone was a small residential street with less activity than Nubia.

Ruzak also testified Baldwin Park's employees should have evaluated the sight lines "at the time that they were supposed to do a study for a stop sign."[8] As part of his response to a separate question and in discussing the red curb painting on Azusa Canyon Road, particularly Baldwin Park's curb return, Ruzak stated, "If they went out there and only painted 20 feet, did they not see that they didn't have enough sufficient [sight] for someone coming out of Nubia to make the turn? I have no information either way on that."[9]

In addition, acknowledging he did not take measurements, Ruzak testified the placement of Nubia Street's stop limit line forced a stop at a location that provided a driver looking to the left with limited sight. He said perhaps moving the limit line up

---

[8]     In the excerpt of his deposition played for the jury, Ruzak provided no context for the "study for a stop sign" that he testified should have been done.

[9]     Although Ruzak indicated the curb, or some of it, on Azusa Canyon Road was painted red after the accident, Ruzak, as discussed, acknowledged there had been at least a "little bit of red curb" at the time of the accident. He explained his opinion related to "that red curb" not having been "extend[ed]."

9

to the curb line, which was on Baldwin Park's road, would "assist a little bit" with the sight line. Ruzak further stated he did not know whether the intersection was properly designed; he did not have the design or as-built plans, did not know who designed it and could not "say anything about that."

### 3. *Jury Instruction Discussions*

After the parties finished presenting their evidence, Rodriguez's counsel renewed a prior objection to having Baldwin Park on the verdict form. The trial court stated it would address the verdict form after discussions on the jury instructions. During those discussions the court asked whether it should give CACI No. 406 (Apportionment of Responsibility).[10] Rodriguez's counsel argued there was no evidence to establish liability for a dangerous condition of public property or to overcome qualified immunity for a dangerous intersection. Colorado's counsel contended there was evidence of fault by Baldwin Park, Irwindale and Lai. Colorado's attorney pointed out that Ruzak testified Baldwin Park was responsible for the curb line where the cars were obstructing the view and also testified both

---

[10] The proposed jury instructions included CACI No. 406, as well as CACI Nos. 1100-1104, 1120-1124. As proposed, CACI No. 406 provided in part, "[[Name of defendant] claims that the [negligence/fault] of [insert name(s) or description(s) of nonparty tortfeasor(s)] [also] contributed to [name of plaintiff]'s harm.] [¶] . . . [¶] If you find that the [negligence/fault] of more than one person including [name of defendant] [and] [[name of plaintiff]/ [and] [name(s) or description(s) of nonparty tortfeasor(s)]] was a substantial factor in causing [name of plaintiff]'s harm, you must then decide how much responsibility each has by assigning percentages of responsibility to each person listed on the verdict form. The percentages must total 100 percent."

10

Irwindale and Baldwin Park had responsibility for the intersection.  Although the court believed there was insufficient evidence of Irwindale's liability, it stated it would, at a minimum, provide the instruction as to Lai and would consider whether Baldwin Park should also be included.

The court later inquired whether, if it was going to instruct the jury with CACI No. 406 for Baldwin Park, it would have to give any other instruction.  Colorado's counsel responded the court would have to give CACI No. 1100 (Dangerous Condition on Public Property—Essential Factual Elements (Gov. Code, § 835)[11]).  Discussing the elements of a claim for dangerous condition of public property, the court stated it did not believe the negligent or wrongful conduct of Baldwin Park's employee created a dangerous condition.  Turning to notice of the dangerous condition, the court initially asked, "What evidence is there that they knew or had notice of it for a long time?"  Subsequently, however, the court clarified that "[t]he question is with regards to that prong, that Baldwin Park had notice of the dangerous condition for a . . . long enough time to have protected against it," and explained it did not see what evidence supported that prong.  After additional argument from counsel,[12] the court stated it was not in a position to include Baldwin Park on CACI No. 406 but would provide an opportunity to persuade it

[11]  Statutory references are to this code unless otherwise stated.

[12]  During oral argument Colorado's counsel told the court the intersection's curb had been painted both before and after the accident and that the exhibits showed the curb was painted before the incident.  Colorado's counsel also earlier acknowledged there was no evidence regarding the design of the intersection.

11

otherwise the next day. It also stated it was not, at that point, going to provide the CACI No. 1100 series of jury instructions.

### 4. *Colorado's Bench Brief and Further Jury Instruction Discussions*

On September 16, 2021 Colorado filed a bench brief in support of his position that Baldwin Park should be included on the verdict form. Arguing there was sufficient evidence of constructive notice to Baldwin Park to allow Colorado to apportion fault to the city, he summarized the evidence at trial that he asserted supported a CACI No. 1100 instruction. Colorado pointed out both Lee and Ruzak testified there were inadequate sight lines for the intersection. He also emphasized Ruzak testified Baldwin Park could have improved the sight lines by painting the curb red. Colorado argued "the condition at the intersection, by inference, must have existed for at least months prior to the accident" and a refusal to instruct the jury with CACI No. 1100 would be to effectively grant a motion for nonsuit as to his affirmative defense of Baldwin Park's comparative fault.

That same day the court continued its discussions about jury instructions with Rodriguez's and Colorado's counsel. The court said it had reviewed Colorado's bench brief and found sufficient evidence to show the existence of a dangerous condition, but no evidence that the notice component had been satisfied, explaining, "There isn't any specific time frame that you've established that would provide the requisite notice for Baldwin Park." The court also stated, "[T]here isn't anything in this record to suggest that prior to the accident there was some inference or direct knowledge by the City of Baldwin Park that it knew or had a dangerous condition on its hand." When Colorado's counsel replied, "The test isn't whether it knew. The

12

test is whether it knew or should have known," the court responded, "Right. Inference. That's what I'm saying. Either way, you certainly don't have the direct. But even in the inferring, I just don't see it." After further argument of counsel, the court stated its intent to adopt its tentative ruling and not to edit the verdict form to add Baldwin Park or give the CACI No. 1100 series of jury instructions. It again explained, "My only concern and where I'm kind of focusing my ruling on is . . . with regards to this notice provision. There's nothing in this particular record to suggest that . . . an obvious danger existed for an adequate period of time before the accident to have permitted Baldwin Park in their exercise of due care to discover and remedy whatever the situation was. In this case, the [sight] lines."

5. *The Verdict and the Judgment*

On September 17, 2021 the jury returned its verdict, finding Colorado negligent and neither Rodriguez nor Lai negligent. It determined Rodriguez's damages totaled $865,000, of which $750,000 was for noneconomic loss. On January 6, 2022 the court entered a judgment in the amount of $816,000 against Colorado and in favor of Rodriguez.[13]

---

[13] The parties do not explain the apparent discrepancy between the jury's verdict and the court's judgment. Rodriguez neither appealed the court's judgment nor argued it should be corrected.

13

## DISCUSSION

1. *The Court Did Not Err in Rejecting the CACI No. 1100 Series of Jury Instructions*

a. *Governing law and standard of review*

Section 835 provides, unless exempted by statute, "[A] public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

For purposes of section 835, subdivision (b), a public entity had constructive notice of a dangerous condition "only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." (§ 835.2, subd. (b); see *Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 842 (*Carson*) ["'[c]onstructive notice may be imputed if it can be shown that an obvious danger existed for an adequate period of time before the accident to have permitted the [public entity], in the exercise of due care, to discover and remedy the situation'"].) Subdivision (b) of section 835.2 continues, in part: "On the issue of due care, admissible evidence includes but is not limited to

14

evidence as to: [¶] (1) Whether the existence of the condition and its dangerous character would have been discovered by an inspection system that was reasonably adequate . . . to inform the public entity whether the property was safe."

The Legislature has defined "dangerous condition" as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).) "The fact that action was taken after an injury occurred to protect against a condition of public property is not evidence that the public property was in a dangerous condition at the time of the injury." (§ 830.5.)

A party in a civil case is, upon request, entitled to correct jury instructions on every theory of the case supported by substantial evidence. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572; *Olive v. General Nutrition Centers, Inc.* (2018) 30 Cal.App.5th 804, 813.) We review the record de novo to determine whether any substantial evidence supported giving a refused jury instruction. (*Evans v. Hood Corp.* (2016) 5 Cal.App.5th 1022, 1045; *Davis v. Honeywell Internat. Inc.* (2016) 245 Cal.App.4th 477, 495.) "A judgment may not be reversed for instructional error in a civil case 'unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'" (*Soule*, at p. 580.)

b. *There was insufficient evidence the cities had constructive notice of a dangerous condition of public property*[14]

Colorado contends the trial court committed reversible error by refusing to give the CACI No. 1100 series of jury instructions on the dangerous condition of public property doctrine, which is based on section 835 and related statutory provisions, because substantial evidence supported that theory of the cities' liability.  Citing *Carson, supra,* 36 Cal.3d at page 842, he also contends the trial court, misconstruing what constituted constructive notice for purposes of the doctrine, erred in requiring a public entity to have known or be on notice of the dangerous condition "for a long time" rather than that "'an obvious danger existed for an adequate period of time before the accident to have permitted the [public entity], in the exercise of due care, to discover and remedy the situation.'"

Although the trial court initially asked the parties' counsel what evidence showed the cities knew or had notice of the dangerous condition for a long time, it is clear the court ultimately based its ruling on the standard for constructive notice articulated in *Carson*, *supra*, 36 Cal.3d 830.  In any event, Colorado fails to show the court erred in rejecting his request for the CACI No. 1100 series of jury instructions because he fails to show there was substantial evidence of the cities' constructive notice to establish liability for a dangerous condition of public

---

[14]    Colorado does not argue that there was liability under subdivision (a) of section 835 (public entity employee's negligent or wrongful act or omission that created the dangerous condition), nor does he argue the cities had actual notice of a dangerous condition.

16

property.  In particular, there was insufficient evidence of the duration of the dangerous condition—the inadequate sight lines at the intersection of Nubia Street and Azusa Canyon Road due primarily to the large van(s) parked close to the intersection corner—prior to the accident to allow a jury to find the cities could have, with due care, discovered and remedied the dangerous situation.  For example, no evidence established how long, if ever, before the accident Baldwin Park or Irwindale had allowed legal parking where the van(s) obstructing the sight lines were located; nor was there any evidence, if the van(s) were parked illegally, that either Baldwin Park or Irwindale should have known of illegal parking in a manner creating inadequate sight lines at the intersection.  (See generally *Strongman v. Kern County* (1967) 255 Cal.App.2d 308 [affirming judgment of nonsuit that was granted on the ground plaintiff failed to establish the county had notice of the dangerous condition, a missing plank in a wooden ramp, for any period of time before the accident]; see also, e.g., *Kotronakis v. City & County of San Francisco* (1961) 192 Cal.App.2d 624, 629-630 [reversing verdict and judgment against the City and County of San Francisco because there was insufficient evidence the city had constructive notice of the presence of vomit on which plaintiff slipped; "there is a total lack of evidence that the particular vomit on which respondent slipped had been there longer than over night"]; *Cheyney v. City of Los Angeles* (1953) 119 Cal.App.2d 75, 77 [affirming order granting a motion for nonsuit in part because there was no evidence as to how long the alleged dangerous or defective condition of a stairway at a city-supervised beach had existed].)

Colorado argues there was substantial evidence from which a jury could reasonably infer constructive notice, pointing to

17

Ruzak's testimony that Baldwin Park painted a red "no parking" curb on Azusa Canyon Road where it intersects with Sandstone, a less busy street than, and located immediately to the north of, Nubia. He contends the jury could reasonably infer from that testimony the cities had been patrolling the area and thus were aware of the traffic patterns and sight lines at the intersections along that stretch of Azusa Canyon Road. In support Colorado quotes subdivision (b)(1) of section 835.2, which provides for the admissibility of evidence as to "[w]hether the existence of the condition and its dangerous character would have been discovered by an inspection system." Ruzak's testimony, Colorado asserts, showed the cities could have discovered and remedied the dangerous condition had they performed a reasonable inspection of the Nubia intersection.

Contrary to Colorado's argument, however, section 835.2, subdivision (b)(1), provides for the admissibility of evidence regarding a reasonably adequate inspection system "[o]n the issue of due care." That statutory provision does not fill in the evidentiary gap as to the length of time the dangerous condition existed. Colorado fails to identify sufficient evidence in the record that speaks to that essential element of a claim of public entity liability. (See, e.g., *State of California v. Superior Court of San Mateo County* (1968) 263 Cal.App.2d 396, 400 ["In the instant case, it can be validly argued that there was a triable issue on the question of inspection, but in determining whether there is constructive notice, the method of inspection has been held to be secondary. The primary and indispensable element of constructive notice is a showing that the *obvious condition existed a sufficient period of time before the accident*"]; cf. CACI No. 1011 ["If an inspection was not made within a reasonable time before

the accident, this may show that the condition existed long enough so that [a store/[a/an] [*insert other commercial enterprise*]] owner using reasonable care would have discovered it"].)[15]  As for Ruzak's testimony that someone had painted a red curb along the stretch of road where the accident occurred at some time after the accident, the testimony not only fails to show how long the dangerous condition existed before the accident, but also does not constitute evidence the public property was in a dangerous condition at the time of Rodriguez's injury.  (See § 830.5.)

Colorado also argues Lee's sight line analysis and visual presentation slides "demonstrate the obvious danger," and that the dangerous condition of the intersection was also readily apparent to other witnesses who testified about the intersection. Colorado, however, must not only establish the dangerous condition was of "an obvious nature" under section 835.2, subdivision (b), but also how long the dangerous condition existed before the accident.  As discussed, he failed to do so.  (See *Heskel v. City of San Diego* (2014) 227 Cal.App.4th 313, 320 ["A claim for constructive notice has two threshold elements.  [Citation.]  A plaintiff must establish that the dangerous condition has existed for a sufficient period of time and that the dangerous condition

---

[15]     Although Ruzak explained his belief Baldwin Park's employees should have evaluated the sight lines at the time they were supposed to do a study for a stop sign, he did not indicate when a study was, or should have been, performed.  He also did not state when the curb on Azusa Canyon Road at the Sandstone intersection was painted red.  Moreover, as Rodriguez points out, and Colorado does not dispute, there was no evidence of prior accidents at the Nubia Street and Azusa Canyon Road intersection or evidence of complaints made to the cities of a dangerous condition at that intersection prior to the accident.

19

was obvious"]; *State of California v. Superior Court of San Mateo County, supra*, 263 Cal.App.2d at p. 401 ["'[w]hile both the notoriety of the condition [citation] and the length of time it must have existed [citation] are normally questions of fact which are to be resolved by the jury, if the evidence as to either of these elements is insufficient as a matter of law the jury's verdict cannot stand,'" italics omitted].)

The cases on which Colorado relies do not compel a contrary conclusion.  In each of those cases, there was the evidence that was missing here—evidence of how long the dangerous condition existed, which thus permitted a finding of constructive notice. (See *Carson, supra,* 36 Cal.3d at pp. 841, 843-844 [City had constructive knowledge of an intersection's allegedly dangerous condition created by a sign obstructing the view; the sign, which was located next to the intersection for seven months prior to the accident, "was visible from a public roadway for many months"]; *Erfurt v. State of California* (1983) 141 Cal.App.3d 837, 844 ["While the particular dangerous condition in this case existed only 20 some days of the year, it had been in existence for over 10 years, since the construction of the highway in 1966.  Under such circumstances the jury could reasonably find constructive notice of the dangerous condition"]; *Straughter v State of California* (1976) 89 Cal.App.3d 102, 104-110 [icy conditions on highway's eastbound lanes on mountain pass causing a series of multivehicle collisions; the State was required to engage in continuous inspection, temperature monitoring and application of abrasives whenever icing appeared imminent, as the evidence showed was the case; notwithstanding claims by the State's witnesses of no ice in the eastbound, as opposed to westbound, lanes before the 7 a.m. accident, the jury could rely on expert

testimony concerning the probability of gradual ice formation on the pass's eastern face shortly after 3 a.m., before the accident]; *Anderson v. City of Thousand Oaks* (1976) 65 Cal.App.3d 82, 91-92 [in a case where a dangerous condition was created by the absence of a speed zone for a new roadway curve with a design speed of 45 miles per hour that was designed, constructed and maintained by the City of Thousand Oaks, it was "undisputed that the new roadway existed without a speed zone from the time it was first opened to traffic until the accident occurred approximately six weeks later"].)

To reiterate, here there was insufficient evidence how long the inadequate sight lines at the Nubia Street and Azusa Canyon Road intersection had existed prior to the accident. The trial court did not err in refusing to instruct on Colorado's theory of proportionate liability against the cities.

2. *The Court Did Not Err in Rejecting Colorado's Request To List the Cities on the Special Verdict Form*[16]

Civil Code section 1431.2, subdivision (a), provides the liability of a defendant for noneconomic damages in a personal

___

[16]  "A special verdict is 'fatally defective' if it does not allow the jury to resolve every controverted issue." (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 325; accord, *Trejo v. Johnson & Johnson* (2017) 13 Cal.App.5th 110, 136; *Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1240.) "'We analyze the special verdict form de novo'" (*Rodriguez v. Parivar, Inc.* (2022) 83 Cal.App.5th 739, 751; see also *McCoy v. Gustafson* (2009) 180 Cal.App.4th 56, 91 ["a special verdict's correctness is analyzed as a matter of law and therefore subject to de novo review"]) and review the adequacy of the special verdict form for prejudicial error (*Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 872).

21

injury action "shall be several only and shall not be joint," with each defendant "liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault" and "a separate judgment . . . rendered against that defendant for that amount."  As Colorado points out, the Supreme Court in *DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 603 explained "[t]he only reasonable construction of [Civil Code] section 1431.2 is that a 'defendant['s]' liability for noneconomic damages cannot exceed his or her proportionate share of fault *as compared with all fault responsible for the plaintiff's injuries,* not merely that of 'defendant[s]' present in the lawsuit."  Similarly the court of appeal in *Vollaro v. Lispi* (2014) 224 Cal.App.4th 93 explained "an injured plaintiff bears the entire risk of loss for any unpaid noneconomic damages attributable to a tortfeasor who has not been sued or is statutorily immune."  (*Id.* at p. 100.) ""'Nonparties" include the universe of tortfeasors who are not present at trial, including defendants who settled before trial and nonjoined alleged tortfeasors.'"  (*Id.* at p. 100, fn. 5.)

Emphasizing that the jury awarded $750,000 in noneconomic damages solely against him, Colorado argues the trial court compounded its error in failing to instruct on Baldwin Park's and Irwindale's responsibility for the dangerous condition of the Nubia Street-Azusa Canyon Road intersection by refusing to add the cities to the special verdict form, which listed only Rodriguez, Colorado and Lai for purposes of the jury's comparative fault findings.  But "in order to apportion liability for noneconomic damages there must be evidence of fault, not just causation."  (*Wilson v. Ritto* (2003) 105 Cal.App.4th 361, 368; see, e.g., *Blevin v. Coastal Surgical Institute* (2015)

232 Cal.App.4th 1321, 1329 ["'[u]nless there is substantial evidence that an individual is at fault . . . , there can be no apportionment of damages to that individual'"; "[t]he burden is on the defendant to prove that a nonparty tortfeasor was at fault"].) As discussed, there was insufficient evidence of constructive notice for a jury to have found the cities liable for a dangerous condition of public property. Colorado does not on appeal explain how a jury could have found the cities at fault on any other basis. It was not error to omit the cities from the special verdict form.

## DISPOSITION

The judgment is affirmed. Rodriguez is to recover his costs on appeal.

PERLUSS, P. J.

We concur:

FEUER, J.

ESCALANTE, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.